# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MATILDE SANTANA,**

      **Plaintiff,**

**v.**                                 **CASE NO. 6:20-CV-1157-ORL-78LRH**

**TELEMUNDO NETWORK GROUP LLC,**
**NBCUNIVERSAL MEDIA, LLC,**

        **Defendants.**

_____/

## JOINT PROPOSED JURY INSTRUCTIONS

      Plaintiff, Matilde Santana ("Plaintiff"), and Defendants, Telemundo Network Group, LLC ("Telemundo"), and NBCUniversal Media, LLC ("NBCUniversal") (collectively, "Defendants"), by and through their respective undersigned counsel, hereby submit the following proposed jury instructions. The parties respectfully reserve the right to submit additional instructions and withdraw some of these requested instructions, depending on developments in trial, as well as the Court's ruling on Defendants' Motion for Summary Judgment (Dkt. No. 80).

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 1.1**
**GENERAL PRELIMINARY INSTRUCTION**
*[OPPOSED]*

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

<u>Credibility of witnesses</u>:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all the evidence; and
- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

<u>Description of the case</u>:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, MATILDE SANTANA, claims the Defendants, TELEMUNDO NETWORK GROUP LLC and NBC UNIVERSAL MEDIA, LLC, engaged in unlawful employment practices by discriminating against her because of her sex in violation of the Civil Rights Act of 1964 and the Florida Civil Rights Act. The Defendants, TELEMUNDO NETWORK GROUP LLC and NBC UNIVERSAL MEDIA, LLC, deny those claims and further contend that they exercised reasonable care to prevent and promptly correct harassment in the workplace and that Plaintiff unreasonably failed to take advantage of

these preventative or corrective opportunities, and that Plaintiff failed to mitigate any damages that she is now seeking.

Burden of proof:

Plaintiff has the burden of proving her case by what the law calls a "preponderance of the evidence." That means Plaintiff must prove that, in light of all the evidence, what she claims is more likely true than not. So, if you could put the evidence favoring Plaintiff and the evidence favoring Defendants on opposite sides of balancing scales, Plaintiff needs to make the scales tip to her side. If Plaintiff fails to meet this burden, you must find in favor of Defendants.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter.  You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Plaintiff will present her witnesses and ask them questions. After Plaintiff questions the witness, Defendants may ask the witness questions – this is called "cross-examining" the witness. Then Defendants will present their witnesses, and Plaintiff may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

[Note: Some judges may wish to give some instructions before closing arguments. See Fed. R. Civ. P. 51(b)(3).]

You'll then go to the jury room to deliberate.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 1.1

**Defendants' Objections:**  This pattern instruction is an instruction that should be given at the beginning of the trial, not after the close of evidence.  This instruction should not be submitted to the jury in writing.  Defendant's instructions herein are those that should be given at the close of evidence and submitted to the jury when they begin deliberations. Additionally, Defendants object to Plaintiff's modifications of the pattern instruction in that it does not include a statement each party set forth in the Pre-Trial Statement and instead only states that Defendants' deny Plaintiff's position without explanation.  Defendants further object to Plaintiff's "alternative" proposal as it does not comply with the requirement that the parties submit joint jury instructions.

**Plaintiff's Response:**  This instruction tracks Pattern Jury Instruction 1.1. Despite Defendants' contention otherwise, the Case Management and Scheduling Order [DE 22] provides that "the parties shall attach to the Joint Final Pretrial Statement a single set of jointly-proposed jury instructions in order of presentation to the jury." There is no limitation requiring the parties to omit those classified as preliminary instructions or trial instructions in the Eleventh Circuit Pattern Jury Instructions, Civil Cases. To the extent that Defendants object to any purported "modifications," such objection is disingenuous as the only modification relates to the summaries of the parties' positions in the "Description of the Case" section.  Defendants have advised that the "Description of the Case" should be the same as the "Statement of the Case" from the Joint Pretrial Stipulation but have not offered any legal support for same.


Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 1.4**
**JURY QUESTIONS**
*[OPPOSED]*

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

· First, you must submit all questions in writing. Please don't ask any questions aloud.

· Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

· Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 1.4

**Defendants' Objections:**  This pattern instruction is an instruction that should be given at the beginning of the trial, not after the close of evidence.  This instruction should not be submitted to the jury in writing.  Defendant's instructions herein are those that should be given at the close of evidence and submitted to the jury when they begin deliberations.

**Plaintiff's Response:**   This instruction tracks Pattern Jury Instruction 1.4. Despite Defendants' contention otherwise, the Case Management and Scheduling Order [DE 22] provides that "the parties shall attach to the Joint Final Pretrial Statement a single set of jointly-proposed jury instructions in order of presentation to the jury." There is no limitation requiring the parties to omit those classified as preliminary instructions or trial instructions in the Eleventh Circuit Pattern Jury Instructions, Civil Cases.

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 1.5**
**INTERIM STATEMENTS**
*[OPPOSED]*

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 1.5

**Defendants' Objections:**  This pattern instruction is an instruction that may be given at the beginning of the trial, not after the close of evidence.  This instruction should not be submitted to the jury in writing.  Defendant's instructions herein are those that should be given at the close of evidence and submitted to the jury when they begin deliberations. Additionally, this instruction is duplicative of Instruction No. 1 and therefore should not be given.

**Plaintiff's Response:**   This instruction tracks Pattern Jury Instruction 1.5. Despite Defendants' contention otherwise, the Case Management and Scheduling Order [DE 22] provides that "the parties shall attach to the Joint Final Pretrial Statement a single set of jointly-proposed jury instructions in order of presentation to the jury." There is no limitation requiring the parties to omit those classified as preliminary instructions or trial instructions in the Eleventh Circuit Pattern Jury Instructions, Civil Cases. To the extent that Defendants feel this instruction is duplicative of Instruction 1.1, given the Court's specific preference for use of the pattern instructions, such objection is unavailing.

Accepted:
Rejected:
Withdrawn:
Given as Amended:

## PLAINTIFF'S PROPOSED JURY INSTRUCTION 2.1
## STIPULATIONS
### [OPPOSED]

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 2.1

**Defendants' Objections:**  This pattern instruction is an instruction that may be given when the parties stipulate to the fact during the course of a trial. It is not given after the close of evidence.   This instruction should not be submitted to the jury in writing. Defendant's instructions herein are those that should be given at the close of evidence and submitted to the jury when they begin deliberations.  This instruction would not be appropriate unless and until there is a stipulation provided to the jury.  Thus, Plaintiff has not shown any basis to give this instruction.

**Plaintiff's Response:**   This instruction tracks Pattern Jury Instruction 2.1. Despite Defendants' contention otherwise, the Case Management and Scheduling Order [DE 22] provides that "the parties shall attach to the Joint Final Pretrial Statement a single set of jointly-proposed jury instructions in order of presentation to the jury." There is no limitation requiring the parties to omit those classified as preliminary instructions or trial instructions in the Eleventh Circuit Pattern Jury Instructions, Civil Cases.  Further, the parties have stipulated to certain facts as set forth in the Joint Pretrial Stipulation and, accordingly, Instruction 2.1 is necessary and proper.
Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 2.2**
**USE OF DEPOSITIONS**
*[OPPOSED]*

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 2.2

**Defendants' Objections:**  This pattern instruction is an instruction that may be given when a deposition is read to the jury during the course of a trial. It is not given after the close of evidence.  This instruction should not be submitted to the jury in writing. Defendant's instructions herein are those that should be given at the close of evidence and submitted to the jury when they begin deliberations.  This instruction would not be appropriate unless and until there is a deposition read to the jury.  Thus, Plaintiff has not shown any basis to give this instruction.

**Plaintiff's Response:**  This instruction tracks Pattern Jury Instruction 2.2.  Despite Defendants' contention otherwise, the Case Management and Scheduling Order [DE 22] provides that "the parties shall attach to the Joint Final Pretrial Statement a single set of jointly-proposed jury instructions in order of presentation to the jury." There is no limitation requiring the parties to omit those classified as preliminary instructions or trial instructions in the Eleventh Circuit Pattern Jury Instructions, Civil Cases. If no depositions are to be presented during trial, this instruction will be withdrawn. In an abundance of caution, however, approved language and any proposed deviations therefrom are properly addressed herein in the interest of judicial economy.

13

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 2.6**
**USE OF INTERROGATORIES**
*[OPPOSED]*

You'll now hear answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

**AUTHORITY**:
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 2.6

**Defendants' Objections:**   This pattern instruction is an instruction that may be given when an interrogatory answer is read to jury during the course of a trial. It is not given after the close of evidence.  This instruction should not be submitted to the jury in writing. Defendant's instructions herein are those that should be given at the close of evidence and submitted to the jury when they begin deliberations.  This instruction would not be appropriate unless and until there is an interrogatory answer read to the jury.  Thus, Plaintiff has not shown any basis to give this instruction.

**Plaintiff's Response:**   This instruction tracks Pattern Jury Instruction 2.6.  Despite Defendants' contention otherwise, the Case Management and Scheduling Order [DE 22] provides that "the parties shall attach to the Joint Final Pretrial Statement a single set of jointly-proposed jury instructions in order of presentation to the jury." There is no limitation requiring the parties to omit those classified as preliminary instructions or trial instructions in the Eleventh Circuit Pattern Jury Instructions, Civil Cases. If no interrogatories are to be presented during trial, this instruction will be withdrawn. In an abundance of caution, however, approved language and any proposed deviations therefrom are properly addressed herein in the interest of judicial economy.

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 2.7**
**IN-TRIAL INSTRUCTION ON NEWS COVERAGE**
*[OPPOSED]*

Reports about this trial may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 2.7

**Defendants' Objections:**  This pattern instruction is an instruction that may be given when the parties stipulate to the fact during the course of a trial. It is not given after the close of evidence.  This instruction should not be submitted to the jury in writing. Defendant's instructions herein are those that should be given at the close of evidence and submitted to the jury when they begin deliberations.  This instruction also is duplicative of Instruction No. 1.  Plaintiff also has not shown any basis to give this instruction.

**Plaintiff's Response:**  This instruction tracks Pattern Jury Instruction 2.7. Despite Defendants' contention otherwise, the Case Management and Scheduling Order [DE 22] provides that "the parties shall attach to the Joint Final Pretrial Statement a single set of jointly-proposed jury instructions in order of presentation to the jury." There is no limitation requiring the parties to omit those classified as preliminary instructions or trial instructions in the Eleventh Circuit Pattern Jury Instructions, Civil Cases. To the extent that Defendants feel this instruction is duplicative of Instruction 1.1, given the Court's specific preference for use of the pattern instructions, such objection is unavailing.

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 2.4**
**INTERIM STATEMENTS**
*[OPPOSED]*

At the beginning of the trial, I told you that the lawyers might make short statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented before. Right now, the attorneys for the parties are each going to make a short statement. Please remember that the statement you are about to hear – like all statements by the lawyers – is the attorney's view of the evidence or of what he anticipates the evidence will be, but isn't itself evidence.


**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 2.4

**Defendants' Objections:**  This pattern instruction is an instruction that may be given during the course of the trial, not after the close of evidence.  This instruction should not be submitted to the jury in writing.  Defendant's instructions herein are those that should be given at the close of evidence and submitted to the jury when they begin deliberations. This instruction also is duplicative of Instruction No. 1 and 3 and places undue emphasis on this instruction.

**Plaintiff's Response:**   This instruction tracks Pattern Jury Instruction 2.4. Despite Defendants' contention otherwise, the Case Management and Scheduling Order [DE 22] provides that "the parties shall attach to the Joint Final Pretrial Statement a single set of jointly-proposed jury instructions in order of presentation to the jury." There is no limitation requiring the parties to omit those classified as preliminary instructions or trial instructions in the Eleventh Circuit Pattern Jury Instructions, Civil Cases. To the extent that Defendants feel this instruction is duplicative of Instruction 1.1 or 1.3, given the Court's specific preference for use of the pattern instructions, such objection is unavailing.


Accepted:
Rejected:
Withdrawn:
Given as Amended:

## JOINT PROPOSED JURY INSTRUCTION 3.1
## INTRODUCTION
### *[OPPOSED]*

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.


**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 3.1

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**JOINT PROPOSED JURY INSTRUCTION 3.2.2**
**THE DUTY TO FOLLOW INSTRUCTIONS**
**– CORPORATE PARTY INVOLVED**
*[AGREED]*

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 3.2.2

Accepted:
Rejected:
Withdrawn:
Given as Amended:

19

**JOINT PROPOSED JURY INSTRUCTION 3.3**
**CONSIDERATION OF DIRECT AND CIRCUMSTANTIAL EVIDENCE; ARGUMENT**
**OF COUNSEL; COMMENTS BY THE COURT**
*[AGREED]*

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 3.3

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**JOINT PROPOSED JURY INSTRUCTION 3.4**
**CREDIBILITY OF WITNESSES**
*[AGREED]*

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 3.4

Accepted:
Rejected:
Withdrawn:
Given as Amended:

21

**JOINT PROPOSED JURY INSTRUCTION 3.5.2**
**IMPEACHMENT OF WITNESSES BECAUSE OF INCONSISTENT STATEMENTS**
**OR FELONY CONVICTION**
*[AGREED]*

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 3.5.2

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**JOINT PROPOSED JURY INSTRUCTION 3.7.1**
**RESPONSIBILITY FOR PROOF – PLAINTIFF'S CLAIMS – PREPONDERANCE OF**
**THE EVIDENCE**
*[AGREED]*

In this case it is the responsibility of Plaintiff to prove every essential part of her claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Plaintiff's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Plaintiff.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Plaintiff's claims by a preponderance of the evidence, you should find for Defendants as to that claim.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 3.7.1

Accepted:
Rejected:
Withdrawn:
Given as Amended:

## JOINT PROPOSED JURY INSTRUCTION 3.7.2
## RESPONSIBILITY FOR PROOF – AFFIRMATIVE DEFENSE PREPONDERANCE OF THE EVIDENCE
### [AGREED]

In this case, Defendants assert the following affirmative defenses: (1) it exercised reasonable care to prevent and promptly correct harassment in the workplace and Plaintiff unreasonably failed to take advantage of these preventative or corrective opportunities; and (2) Plaintiff failed to mitigate any damages.  Even if the Plaintiff proves her claims by a preponderance of the evidence, the Defendants can prevail in this case if they prove an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the Defendants do not have to disprove the Plaintiff's claims, but if the Defendants raise an affirmative defense, the only way they can prevail on that specific defense is if they prove that defense by a preponderance of the evidence.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 3.7.2 (modified); Antoniewicz v. Univ. of Texas Health & Sci. Ctr. at Houston, No. CIV.A. H-14-2083, 2015 WL 3771007 at *8 (S.D. Tex. June 17, 2015); Patterson v. WMW, Inc., No. 1:11-CV-3172-WSD-SSC, 2012 WL 3261290, *5 (N.D. Ga. June 12, 2012); Jackson v. Seaboard Coast Line R.R., 678 F.2d 992, 1010 (11th Cir. 1982).

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 4.6**
**TITLE VII – CIVIL RIGHTS ACT – WORKPLACE HARASSMENT BY SUPERVISOR –**
**NO TANGIBLE EMPLOYMENT ACTION TAKEN**
**(WITH AFFIRMATIVE DEFENSE BY EMPLOYER)**
*[OPPOSED]*

In this case, Plaintiff claims that Defendants violated Federal Civil Rights statutes that prohibit employers from discriminating against employees in the terms or conditions of employment because of their sex. These statutes prohibit the creation of a hostile work environment caused by harassment because of an employee's sex.

Specifically, Plaintiff claims that her supervisors, Mr. Anibal Soto and Mr. Luis Roldan, harassed her because of her sex and that the harassment created a hostile work environment.

Defendants deny Plaintiff's claims and assert that  the alleged sexual harassment is not sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment; that Defendants exercised reasonable care to prevent and promptly correct harassment in the workplace, that Plaintiff unreasonably failed to avail herself of those corrective opportunities in a timely manner; and that Plaintiff has failed to show that Defendants' alleged acts proximately caused her any damages.  To succeed on her claim against Defendants, Plaintiff must prove each of the following facts by a preponderance of the evidence:

First:   Mr. Anibal Soto and/or Mr. Luis Roldan harassed her because of her sex;

Second:   The harassment by Mr. Anibal Soto and/or Mr. Luis Roldan created a hostile work environment for Plaintiff; and

Third:   Plaintiff suffered damages because of the hostile work environment.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

A "hostile work environment" created by harassment because of sex exists if:

(a) Plaintiff was subjected to offensive acts or statements about sex – even if they were not specifically directed at her;
(b) Plaintiff did not welcome the offensive acts or statements, which means that Plaintiff did not directly or indirectly invite or solicit them by her own acts or statements;
(c) the offensive acts or statements were so severe or pervasive that they materially altered the terms or conditions of Plaintiff's employment;
(d) a reasonable person – not someone who is overly sensitive – would have found that the offensive acts or statements materially altered the terms or conditions of the person's employment; and
(e) Plaintiff believed that the offensive acts or statements materially altered the terms or conditions of her employment.

To determine whether the conduct in this case was "so severe or pervasive" that it materially altered the terms or conditions of Plaintiff's employment, you should consider all the circumstances, including:

(a) how often the discriminatory conduct occurred;
(b) its severity;
(c) whether it was physically or psychologically threatening or humiliating; and
(d) whether it unreasonably interfered with Plaintiff's work performance.

A "material alteration" is a significant change in conditions. Conduct that amounts only to ordinary socializing in the workplace does not create a hostile work environment. A hostile work environment will not result from occasional horseplay, flirtation, offhand comments, simple teasing, sporadic use of offensive language, or occasional jokes related to sex. But discriminatory intimidation, ridicule, insults, or other verbal or physical conduct may be so extreme that it materially alters the terms or conditions of employment.

If you find that Mr. Anibal Soto and/or Mr. Luis Roldan harassed Plaintiff because of her sex, and that the harassment created a hostile work environment, then you must decide whether she suffered damages as a result. If the damages would not have existed

except for the hostile work environment, then you may find that Plaintiff suffered those damages because of the hostile work environment.

**Including Affirmative Defense:** If you find that Plaintiff suffered damages because of the hostile work environment, you must decide whether Defendants have established their affirmative defense.

To succeed on its affirmative defense, Defendants must prove each of the following facts by a preponderance of the evidence:

First: Defendants exercised reasonable care to prevent and promptly correct any harassing behavior because of sex in the workplace; and

Second: Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities Defendants provided to avoid or correct the harm.

To determine whether Defendants exercised reasonable care, you may consider whether:

(a) Defendants created an explicit policy against harassment because of sex in the workplace;
(b) Defendants communicated the policy to their employees; and
(c) the policy provided a reasonable process for Plaintiff to complain to higher management.

To determine whether Plaintiff unreasonably failed to take advantage of a preventive or corrective opportunity Defendants provided, you may consider, for example, whether Plaintiff unreasonably failed to follow a complaint procedure Defendants provided.

If you find that Defendants established their affirmative defense, you must indicate that on the verdict form, and you will not decide the issue of Plaintiff's damages. If you find that Defendants did not establish their affirmative defense, you must decide the issue of Plaintiff's damages.

27

When considering the issue of Plaintiff's compensatory damages, you should determine what amount, if any, has been proven by Plaintiff by a preponderance of the evidence as full, just and reasonable compensation for all of Plaintiff's damages as a result of the hostile work environment, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Defendants. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Plaintiff has proved them by a preponderance of the evidence, and no others:

(a) net lost wages and benefits to the date of your verdict; and
(b) emotional pain and mental anguish.

To determine the amount of Plaintiff's net lost wages and benefits, you should consider evidence of the actual wages she lost and the monetary value of any benefits she lost.

To determine whether and how much Plaintiff should recover for emotional pain and mental anguish, you may consider both the mental and physical aspects of injury – tangible and intangible. Plaintiff does not have to introduce evidence of a monetary value for intangible things like mental anguish. You must determine what amount will fairly compensate her for those claims. There is no exact standard to apply, but the award should be fair in light of the evidence.

**Nominal Damages:**  Nominal damages are a minimal sum of money awarded to a plaintiff whose legal rights have been technically violated but who has not established that he or she is entitled to compensatory damages because there was no accompanying loss or harm.   If you determine that the evidence does not support an award of

28

compensatory damages for Plaintiff, but that her legal rights were violated by the actions of Defendants, you may still award her nominal damages.

**Mitigation of Damages:** You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Plaintiff to be reasonably diligent in seeking substantially equivalent employment to the position she held with Defendants. To prove that Plaintiff failed to mitigate damages, Defendants must prove by a preponderance of the evidence that (1) work comparable to the position Plaintiff held with Defendants was available, and (2) Plaintiff did not make reasonably diligent efforts to obtain it. If, however, Defendants show that Plaintiff did not make reasonable efforts to obtain any work, then Defendants do not have to prove that comparable work was available.

If you find that Defendants proved by a preponderance of the evidence that Plaintiff failed to mitigate damages, then you should reduce the amount of Plaintiff's damages by the amount that could have been reasonably realized if Plaintiff had taken advantage of an opportunity for substantially equivalent employment.

**Punitive Damages:** Plaintiff also asks you to award punitive damages. The purpose of punitive damages is not to compensate Plaintiff but, instead, to punish Defendants for wrongful conduct and to deter similar wrongful conduct. You can award punitive damages even if you determine that Plaintiff is not entitled to any compensatory damages or damages for pain and suffering.

To be entitled to an award of punitive damages Plaintiff must prove by a preponderance of the evidence that Defendants acted with either malice or with reckless

indifference toward Plaintiff's federally protected rights. Specifically, Plaintiff must show that an employee of Defendants, acting in a managerial capacity, either acted with malice or with reckless indifference to Plaintiff's federally protected rights.

There is no bright-line rule about which employees act in a managerial capacity. You must determine whether an employee acted in a "managerial capacity" based upon the type of authority Defendants gave the employee and the amount of discretion that the employee has in what is done and how it is accomplished.

To show that Defendants acted with malice, Plaintiff must show that an employee acting in a managerial capacity knew that federal law prohibits discrimination and discriminated against Plaintiff anyway. To show that Defendants acted with reckless indifference to Plaintiff's federally protected rights, Plaintiff must show that an employee acting in a managerial capacity acted with serious disregard for whether the conduct violated federal law. Either malice or reckless indifference is sufficient to entitle Plaintiff to an award of punitive damages; Plaintiff need not prove both.

An employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where the managerial employees' acts are contrary to the employer's good faith efforts to comply with the law by implementing policies and programs designed to prevent unlawful discrimination in the workplace. However, the mere existence of policies prohibiting discrimination does not preclude punitive damages if the policies are ineffective.

There is no single factor that determines whether Defendants acted with malice or with reckless indifference to Plaintiff's federally protected rights. In determining whether to award punitive damages, you may consider factors such as: (1) whether Defendants

engaged in a pattern of discrimination toward its employees; (2) whether Defendants acted spitefully or malevolently; (3) whether Defendants showed a reckless disregard for civil legal obligations; (4) whether Defendants failed to investigate reports of discrimination and/or showed reckless disregard to Plaintiff's rights in the course of conducting such investigation; (5) whether Defendants failed to take corrective action concerning discriminatory acts or comments by their employees; and (6) whether either of the persons accused of discrimination were included in the decision-making process of Defendants concerning the handling of the investigation and/or any course of action relative to Plaintiff following its conclusion.  *See* 42 USC 1981a(b)(1).

The existence of compensatory or nominal damages was not a prerequisite to an award of punitive damages against Defendant in this action.  Thus, you may determine that punitive damages are appropriate even if you determine that Plaintiff is not entitled to compensatory or nominal damages.

If you find that punitive damages should be assessed against Defendants, you may consider the evidence regarding Defendants' financial resources in fixing the amount of such damages.  In this regard, if you find that punitive damages are warranted and that Defendants are large companies, the award of punitive damages would have to be substantial in order to punish Defendants for their wrongful conduct and to deter similar wrongful conduct.

### SPECIAL INTERROGATORIES TO THE JURY

**Do you find from a preponderance of the evidence:**

1. That one or more of Plaintiff's supervisors harassed Plaintiff because of her sex?

Answer Yes or No                 _____

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

2. That the harassment created a hostile work environment for Plaintiff?

Answer Yes or No                 _____

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

3. That Defendants exercised reasonable care to prevent and promptly correct any harassing behavior in the workplace because of sex?

Answer Yes or No                 _____

If your answer is "Yes," go to the next question. If your answer is "No," go to Question No. 5.

4. That Plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities Defendants provided to avoid or correct the harm?

Answer Yes or No                 _____

If your answer is "Yes," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "No," go to the next question.

5. That Plaintiff suffered damages because of the hostile work environment?

Answer Yes or No                 _____

If your answer is "No," go to Question No. 8. If your answer is "Yes," go to the next question.

6. That Plaintiff should be awarded damages to compensate for a net loss of wages and benefits to the date of your verdict?

        Answer Yes or No        _____

        If your answer is "Yes,"
        in what amount?        $_____

7. That Plaintiff should be awarded damages to compensate for emotional pain and mental anguish?

        Answer Yes or No        _____

        If your answer is "Yes,"
        in what amount?        $_____

If your answer is "Yes," to Question No. 6 and/or 7, go to Question No. 9. If you answer is "No" to Questions No. 6 and 7, go to the next question.

8. That nominal damages should be assessed against Defendants?

        Answer Yes or No        _____

        If your answer is "Yes,"
        in what amount?        $_____

9. That punitive damages should be assessed against Defendants?

        Answer Yes or No        _____

        If your answer is "Yes,"
        in what amount?        $_____

SO SAY WE ALL.

        _____
        Foreperson's Signature

DATE: _____

**AUTHORITY:**

Pattern Jury Instructions, Civil Cases, Eleventh Circuit 4.6 (modified)
*Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 118 S. Ct. 2275, 2280 (1998); *Henson v. Dundee*, 682 F.2d 897, 905 (11th Cir. 1982); *EEOC v. W & O, Inc.*, 36 F. Supp. 2d 1348, 1350 (S.D. Fla. 1998) aff'd *United States EEOC v. W & O Inc.*, 213 F.3d 600, 615 (11th Cir. 2000); *Pullum v. Ford Motor Co.*, No. 2:19-cv-120-ECM, 2019 U.S. Dist. LEXIS 104097, at *5 (M.D. Ala. June 21, 2019) *(citing Roe v. Michelin N. Am. Inc.*, 637 F.Supp.2d 995, 998 (M.D. Ala. 2009), *aff'd*, 613 F.3d 1058 (11th Cir. 2013); *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320 (11th Cir. 1999).

**Defendants' Objections:** Defendants object to this instruction in its entirety. As Defendants briefed in their Omnibus Motion *in Limine* (Dkt. No. 146 at 9-10), and in their Motion for Summary Judgment (Dkt. No. 67 at 2, 5, 19), Plaintiff has not presented any evidence and has not met her burden of establishing that Soto is a "supervisor," as that term is defined under Vance v. Ball State University, 570 U.S. 421 (2013). The fact that Soto was Plaintiff's direct report is not relevant to the determination of whether he was a "supervisor" within the meaning of Title VII because that is a term of art that requires that Soto have had the ability to hire, fire, discipline, promote, or reassign Plaintiff, which he did not. Even if Defendants had admitted to Soto having been a supervisor in their Answer, the parties have filed a pretrial statement in this case, and that "pretrial statement supersedes the pleadings and like the pleadings, puts the parties on notice of the issues to be tried." Horowitch v. Diamond Aircraft Indus., Inc., No. 6:06-CV-1703ORL19KRS, 2009 WL 3790415, at *2 (M.D. Fla. Nov. 9, 2009) (citing Delta Health Group Inc. v. Royal Surplus Lines Ins. Co., 327 F. App'x 860, 867 (11th Cir. 2009)). Defendants further object to this instruction because it does not accurately reflect Plaintiff's claims nor Defendants' defenses to Plaintiff's hostile work environment claim.

Defendants object to Plaintiff's claim that punitive damages may be awarded even if compensatory damages are not, which is not an accurate recitation of the law and fails to comply with the pattern jury instructions, which specifically requires compensatory damages before punitive damages can be considered. In support of that position Plaintiff cites to Second and Seventh Circuit case law that is not only not the law of this Circuit, but it also predates the Supreme Court's decision in State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003), wherein the Supreme Court held that few awards exceeding a single digit ratio between punitive and compensatory damages will satisfy due process. Defendants further object to Plaintiff's proposed instruction on punitive damages in its entirety because Plaintiff's attempt to instruct the jury on punitive damages is improper since she does not have any evidentiary basis for recovery of punitive damages. Plaintiff has raised no evidence to support that Defendants have engaged in "discriminatory practices with malice or with reckless indifference" to her federally protected rights, and Plaintiff has failed to support submitting the issue of punitive damages to the jury. Defendants further object to Plaintiff's proposed instruction regarding back and front pay damages because Plaintiff does not have any evidence to support that any alleged discrimination caused her inability to work. Instead, Plaintiff admits that she has been unable to work since November 12, 2019 as a result of the many surgeries she had following a non-work-related car accident. Plaintiff's requested

instruction is not substantially correct because it has no legal support and because it has no basis in the evidence. <u>Reppert v. I.R.S.</u>, 418 F. App'x 897, 899 (11th Cir. 2011) (citing <u>United States v. Terebecki</u>, 692 F.2d 1345, 1351 (11th Cir.1982); <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242 (1986) (no requirement that question be submitted to jury unless proffered evidence sufficient to warrant decision favorable to requesting party)). Defendants also object to Plaintiff's modifications of the pattern instruction, including her inclusion the "nominal" damages instruction, which is not part of this pattern instruction, was not pled in her Amended Complaint (Dkt. No. 31), and which is not available to Plaintiff because proving damages is a necessary element of her claim. Plaintiff's citation to *Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 118 S. Ct. 2275, 2280 (1998) is inapposite, because the plaintiff in that case specifically "sought a judgment against the City for nominal damages[.]" Defendants further object to Plaintiff's use of this proposed instruction because it directly conflicts with Plaintiff's proposed instruction number 20, below.

**Plaintiff's Response:** Defendants admitted in Paragraph 20 of their Answer that Soto was Plaintiff's manager and supervisor. Specifically, Defendants stated as follows, in pertinent part: "Defendant Telemundo admits that in February 2018, Telemundo acquired the Orlando station previously owned by ZGS Communications and, at that time, *Anibal Soto transitioned to Telemundo as a Sales Manager and Santana's supervisor*." *See Defendants' Answer and Defenses to Plaintiff's Amended Complaint*, ¶ 20 (emphasis added). Defendants cannot avoid this admission simply by refusing to acknowledge it in the Joint Pretrial Stipulation. Defendants blatantly mischaracterize the decision in *Horowitch v. Diamond Aircraft Indus., Inc.*, No. 6:06-cv-1703-Orl-19KRS, 2009 U.S. Dist. LEXIS 108916, at *6 (M.D. Fla. Nov. 8, 2009) (which cites to *Delta Health Group Inc. v. Royal Surplus Lines Ins. Co.*, 327 F. App'x 860, 867 (11th Cir. 2009)), as supporting their position in this regard. *Horowitch* permitted a plaintiff to assert a previously-unpled claim for punitive damages at trial because the issue was affirmatively raised – and stipulated to by the defendant – in the parties' joint pretrial stipulation. *Id.*, at *8. Such is not the case here, as Plaintiff has not stipulated that Soto was not her manager, nor has she stipulated that Defendants should be permitted to so cavalierly toss aside their well-pled admission to the contrary. *Horowitch* cites to *Delta Health Group* which, in turn, provides only that a party may be permitted to present a claim at trial that had not been pled or included in an earlier motion for summary judgment if it was subsequently included in the joint pretrial stipulation that was adopted by the court. Nothing in the decision, however, purports to allow a party to avoid a prior admission simply by refusing to acknowledge it in the joint pretrial stipulation, which is the case here. If that was possible, parties could be deceived into relying on admissions in the pleadings until discovery was closed, at which point the admitting party could change its position in the pretrial stipulation. That is exactly what Defendants are trying to do here. *See Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987) (a party is bound by the admissions in their pleadings). Further, there is no dispute that Mr. Roldan, as general manager, was also Plaintiff's supervisor. Defendants' objections based on evidentiary issues are improper, as the jury is being instructed to consider the evidence. If there is no evidence to support Plaintiff's claims and/or an award of punitive damages, the jury will decide accordingly. The interrogatories are part of the pattern instruction and will remain absent any legal

authority for removing them. Nominal damages are recoverable pursuant to *Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 118 S. Ct. 2275, 2280 (1998); *Henson v. Dundee*, 682 F.2d 897, 905 (11th Cir. 1982).   Compensatory or nominal damages are not a prerequisite to an award of punitive damages.   *EEOC v. W & O, Inc.*, 36 F. Supp. 2d 1348, 1350 (S.D. Fla. 1998) aff'd *United States EEOC v. W&O Inc.*, 213 F.3d 600, 615 (11th Cir. 2000).  Regarding punitive damages awarded against large companies, please see *Pullum v. Ford Motor Co.*, No. 2:19-cv-120-ECM, 2019 U.S. Dist. LEXIS 104097, at *5 (M.D. Ala. June 21, 2019) *(citing Roe v. Michelin N. Am. Inc.*, 637 F.Supp.2d 995, 998 (M.D. Ala. 2009), *aff'd*, 613 F.3d 1058 (11th Cir. 2013) ("[W]hen considering claims for punitive damages against large companies, it is clear that 'any award that is soundly and honestly calculated to punish and deter a large company's wanton behavior …would have to be substantial.'"); *See also Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320 (11th Cir. 1999) (noting that "[a] bigger award is needed to 'attract the . . . attention' of a large corporation'" and approving a punitive damages award where ratio of punitive to compensatory damages was 100:1).

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**DEFENDANTS' PROPOSED JURY INSTRUCTION 4.7**
**CIVIL RIGHTS ACT – WORKPLACE HARASSMENT BY CO-WORKER OR THIRD**
**PARTY – NO TANGIBLE EMPLOYMENT ACTION TAKEN**
*[OPPOSED]*

In this case, Plaintiff claims that Defendants violated Federal Civil Rights statutes that prohibit employers from discriminating against employees in the terms or conditions of employment because of their sex. These statutes prohibit the creation of a hostile work environment caused by harassment because of an employee's sex.

Specifically, Plaintiff claims that Mr. Anibal Soto harassed her because of her sex, that the harassment created a hostile work environment for her, and that Defendants knew, or in the exercise of reasonable care should have known about the harassment, but did not take prompt remedial action.

Defendants deny Plaintiff's claims and assert that the alleged sexual harassment is not sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and that Defendants exercised reasonable care to prevent and promptly correct harassment in the workplace; that Plaintiff unreasonably failed to avail herself of those corrective opportunities in a timely manner; and that Plaintiff has shown that Defendants' alleged acts proximately caused her any damages.

To succeed on her claim against Defendants, Plaintiff must prove each of the following facts by a preponderance of the evidence:

First:     Mr. Anibal Soto harassed her because of her sex;
Second:  The harassment created a hostile work environment for Plaintiff;
Third:    Plaintiff's supervisor knew, or in the exercise of reasonable care should have known, about the hostile work environment;
Fourth:  Plaintiff's supervisor failed to take prompt remedial action to eliminate the hostile work environment; and
Fifth:    Plaintiff suffered damages because of the hostile work environment.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

A "hostile work environment" created by harassment because of sex exists if:

(a) Plaintiff was subjected to offensive acts or statements about sex – even if they were not specifically directed at her;

(b) Plaintiff did not welcome the offensive acts or statements, which means that Plaintiff did not directly or indirectly invite or solicit them by her own acts or statements;

(c) the offensive acts or statements were so severe or pervasive that they materially altered the terms or conditions of Plaintiff's employment;

(d) a reasonable person – not someone who is overly sensitive – would have found that the offensive acts or statements materially altered the terms or conditions of the person's employment; and

(e) Plaintiff believed that the offensive acts or statements materially altered the terms or conditions of her employment.

To determine whether the conduct in this case was "so severe or pervasive" that it materially altered the terms or conditions of Plaintiff's employment, you should consider all the circumstances, including:

(a) how often the discriminatory conduct occurred;

(b) its severity;

(c) whether it was physically or psychologically threatening or humiliating; and

(d) whether it unreasonably interfered with Plaintiff's work performance.

A "material alteration" is a significant change in conditions. Conduct that amounts only to ordinary socializing in the workplace does not create a hostile work environment. A hostile work environment will not result from occasional horseplay, sexual flirtation, offhand comments, simple teasing, sporadic use of offensive language, or occasional jokes related to sex. But discriminatory intimidation, ridicule, insults, or other verbal or physical conduct may be so extreme that it materially alters the terms or conditions of employment.

In this case, Plaintiff claims that Mr. Soto, her coworker, created and carried on the hostile work environment.

You can hold Defendants responsible for the hostile work environment only if Plaintiff proves by a preponderance of the evidence that Plaintiff's supervisor, or a person with the authority to receive, address, or report a complaint of harassment, knew, or should have known, of the hostile work environment and permitted it to continue by failing to take remedial action.

To show that a supervisor, or a person with the authority to receive, address, or report a complaint of harassment, "should have known" of a hostile work environment, Plaintiff must prove that the hostile environment was so pervasive and so open and obvious that any reasonable person in the supervisor's position ,or in the position of a person with the authority to receive, address, or report a complaint of harassment, would have known that the harassment was occurring.

For the fifth element, if you find that:

(a) Mr. Soto harassed Plaintiff because of her sex;
(b) the harassment created a hostile work environment;
(c) Plaintiff's supervisor knew, or in the exercise of reasonable care should have known, about the hostile work environment; and
(d) Plaintiff's supervisor did not take prompt remedial action to eliminate the hostile work environment,

then you must decide whether Plaintiff suffered damages because of the hostile work environment.

If the damages would not have existed except for the hostile work environment, then you may find that Plaintiff suffered those damages because of the hostile work environment.

If you find that Mr. Anibal Soto did not harass Plaintiff because of her because of her sex, that any such harassment was not sufficiently severe or pervasive enough to create a hostile work environment for her, or that that Defendants did not know the harassment, you must find in favor of Defendants. If you find for Plaintiff and against Defendants on this defense, you must consider Plaintiff's compensatory damages, on which I will later instruct you.

**Plaintiff's Objections:**  Plaintiff objects to this instruction in its entirety, as there is no basis for an instruction regarding harassment by a co-worker, as Defendants admitted in Paragraph 20 of their Answer that Soto was Plaintiff's manager and supervisor. Specifically, Defendants stated as follows, in pertinent part: "Defendant Telemundo admits that in February 2018, Telemundo acquired the Orlando station previously owned by ZGS Communications and, at that time, *Anibal Soto transitioned to Telemundo as a Sales Manager and Santana's supervisor*."  *See Defendants' Answer and Defenses to Plaintiff's Amended Complaint*, ¶ 20 (emphasis added).  Defendants cannot avoid this admission simply by refusing to acknowledge it in the Joint Pretrial Stipulation. Defendants blatantly mischaracterize the decision in *Horowitch v. Diamond Aircraft Indus., Inc.*, No. 6:06-cv-1703-Orl-19KRS, 2009 U.S. Dist. LEXIS 108916, at *6 (M.D. Fla. Nov. 8, 2009) (which cites to *Delta Health Group Inc. v. Royal Surplus Lines Ins. Co.*, 327 F. App'x 860, 867 (11th Cir. 2009), as supporting their position in this regard.  *Horowitch* permitted a plaintiff to assert a previously-unpled claim for punitive damages at trial because the issue was affirmatively raised – and stipulated to by the defendant – in the parties' joint pretrial stipulation.  *Id.*, at *8.  Such is not the case here, as Plaintiff has not stipulated that Soto was not her manager, nor has she stipulated that Defendants should be permitted to so cavalierly toss aside their well-pled admission to the contrary. *Horowitch* cites to *Delta Health Group* which, in turn, provides only that a party may be permitted to present a claim at trial that had not been pled or included in an earlier motion for summary judgment if it was subsequently included in the joint pretrial stipulation that was adopted by the court.  Nothing in the decision, however, purports to allow a party to avoid a prior admission simply by refusing to acknowledge it in the joint pretrial stipulation, which is the case here.  If that was possible, parties could be deceived into relying on admissions in the pleadings until discovery was closed, at which point the admitting party could change its position in the pretrial stipulation.  That is exactly what Defendants are trying to do here. *See Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987) (a party is bound by the admissions in their pleadings). Further, there is no dispute that Mr. Roldan, as general manager, was also Plaintiff's supervisor.

If, however, the court determines that this instruction is permissible as an alternative to the "supervisor" instruction in 4.6, then it must include the damage provisions of 4.7, which Defendants propose stating as a separate instruction, despite there being no legal basis

for deviating from the standard form instruction in such a manner. The instruction must also include the special interrogatories from the standard form. Further, Defendants' comments regarding evidence which has yet to be presented are improper, as the jury is being instructed to consider the evidence. If there is no evidence to support Plaintiff's claims and/or an award of punitive damages, the jury will decide accordingly. The interrogatories are part of the pattern instruction and will remain absent any legal authority for removing them. Nominal damages are recoverable pursuant to *Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 118 S. Ct. 2275, 2280 (1998); *Henson v. Dundee*, 682 F.2d 897, 905 (11th Cir. 1982). Compensatory or nominal damages are not a prerequisite to an award of punitive damages. *EEOC v. W & O, Inc.*, 36 F. Supp. 2d 1348, 1350 (S.D. Fla. 1998) aff'd *United States EEOC v. W&O Inc.*, 213 F.3d 600, 615 (11th Cir. 2000). Regarding punitive damages awarded against large companies, please see *Pullum v. Ford Motor Co.*, No. 2:19-cv-120-ECM, 2019 U.S. Dist. LEXIS 104097, at *5 (M.D. Ala. June 21, 2019) *(citing Roe v. Michelin N. Am. Inc.*, 637 F.Supp.2d 995, 998 (M.D. Ala. 2009), *aff'd*, 613 F.3d 1058 (11th Cir. 2013) ("[W]hen considering claims for punitive damages against large companies, it is clear that 'any award that is soundly and honestly calculated to punish and deter a large company's wanton behavior …would have to be substantial.'"); *See also Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320 (11th Cir. 1999) (noting that "[a] bigger award is needed to 'attract the . . . attention' of a large corporation'" and approving a punitive damages award where ratio of punitive to compensatory damages was 100:1).

**Defendants' response to Plaintiff's Objection:** As Defendants briefed in their Omnibus Motion *in Limine* (Dkt. No. 146 at 9-10), and in their Motion for Summary Judgment (Dkt. No. 67 at 2, 5, 19), Plaintiff has not presented any evidence and has not met her burden of establishing that Soto is a "supervisor," as that term is defined under <u>Vance v. Ball State University</u>, 570 U.S. 421 (2013). The fact that Soto was Plaintiff's direct report is not relevant to the determination of whether he was a "supervisor" within the meaning of Title VII because that is a term of art that requires that Soto have had the ability to hire, fire, discipline, promote, or reassign Plaintiff, which he did not. Even if Defendants had admitted to Soto having been a supervisor in their Answer, the parties have filed a a pretrial statement in this case, and that "pretrial statement supersedes the pleadings and like the pleadings, puts the parties on notice of the issues to be tried." Horowitch v. Diamond Aircraft Indus., Inc., No. 6:06-CV-1703ORL19KRS, 2009 WL 3790415, at *2 (M.D. Fla. Nov. 9, 2009) (citing <u>Delta Health Group Inc. v. Royal Surplus Lines Ins. Co.</u>, 327 F. App'x 860, 867 (11th Cir. 2009)).

In response to Plaintiff's objection, Plaintiff's attempt to instruct the jury on punitive damages is improper since she does not have any evidentiary basis for recovery of punitive damages. Plaintiff has raised no evidence to support that Defendants have engaged in "discriminatory practices with malice or with reckless indifference" to her federally protected rights, and Plaintiff has failed to support submitting the issue of punitive damages to the jury. Plaintiff's requested instruction is not substantially correct because it has no legal support and because it has no basis in the evidence. <u>Reppert v. I.R.S.</u>, 418 F. App'x 897, 899 (11th Cir. 2011) (citing <u>United States v. Terebecki</u>, 692 F.2d 1345, 1351 (11th Cir.1982); <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242 (1986) (no

requirement that question be submitted to jury unless proffered evidence sufficient to warrant decision favorable to requesting party)).

**AUTHORITY:**

Pattern Jury Instructions, Civil Cases, Eleventh Circuit 4.7 (modified); <u>Vance v. Ball State University,</u> 570 U.S. 421 (2013).

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**DEFENDANTS' PROPOSED JURY INSTRUCTION**
**DAMAGES**
*[OPPOSED]*

If you find that Plaintiff suffered damages because of the hostile work environment, you must decide the issue of her compensatory damages.

When considering the issue of Plaintiff's compensatory damages, you should determine what amount, if any, has been proven by Plaintiff by a preponderance of the evidence as full, just and reasonable compensation for all of Plaintiff's damages as a result of the hostile work environment, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Defendants. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Plaintiff has proved them by a preponderance of the evidence, and no others:

(a) net lost wages and benefits to the date of your verdict; and
(b) emotional pain and mental anguish.

To determine the amount of Plaintiff's net lost wages and benefits, you should consider evidence of the actual wages she lost and the monetary value of any benefits she lost.

To determine whether and how much Plaintiff should recover for emotional pain and mental anguish, you may consider both the mental and physical aspects of injury – tangible and intangible. Plaintiff does not have to introduce evidence of a monetary value for intangible things like mental anguish. You must determine what amount will fairly

compensate her for those claims. There is no exact standard to apply, but the award should be fair in light of the evidence.

**Mitigation of Damages:** You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Plaintiff to be reasonably diligent in seeking substantially equivalent employment to the position she held with Defendants. To prove that Plaintiff failed to mitigate damages, Defendants must prove by a preponderance of the evidence that (1) work comparable to the position Plaintiff held with Defendants was available, and (2) Plaintiff did not make reasonably diligent efforts to obtain it. If, however, Defendants shows that Plaintiff did not make reasonable efforts to obtain any work, then Defendants does not have to prove that comparable work was available.

If you find that Defendants proved by a preponderance of the evidence that Plaintiff failed to mitigate damages, then you should reduce the amount of Plaintiff's damages by the amount that could have been reasonably realized if Plaintiff had taken advantage of an opportunity for substantially equivalent employment.


**Plaintiff's Objections:**  Plaintiff objects to this instruction in its entirety, as there is no basis for an instruction regarding harassment by a co-worker, as Defendants admitted in Paragraph 20 of their Answer that Soto was Plaintiff's manager and supervisor. Specifically, Defendants stated as follows, in pertinent part: "Defendant Telemundo admits that in February 2018, Telemundo acquired the Orlando station previously owned by ZGS Communications and, at that time, *Anibal Soto transitioned to Telemundo as a Sales Manager and Santana's supervisor*."  *See Defendants' Answer and Defenses to Plaintiff's Amended Complaint*, ¶ 20 (emphasis added).  Defendants cannot avoid this admission simply by refusing to acknowledge it in the Joint Pretrial Stipulation. Defendants blatantly mischaracterize the decision in *Delta Health Group Inc. v. Royal Surplus Lines Ins. Co.*, 327 F. App'x 860, 867 (11th Cir. 2009), as supporting their position in this regard.  Contrary to Defendants' interpretation, *Delta Health Group* provides only

that a party may be permitted to present a claim at trial that had not been pled or included in an earlier motion for summary judgment if it was subsequently included in the joint pretrial stipulation that was adopted by the court.  Nothing in the decision, however, purports to allow a party to avoid a prior admission simply by refusing to acknowledge it in the joint pretrial stipulation, which is the case here.  If that was possible, parties could be deceived into relying on admissions in the pleadings until discovery was closed, at which point the admitting party could change its position in the pretrial stipulation.  That is exactly what Defendants are trying to do here. *See Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987) (a party is bound by the admissions in their pleadings). Further, there is no dispute that Mr. Roldan, as general manager, was also Plaintiff's supervisor.

If, however, the court determines that this instruction is permissible as an alternative to the "supervisor" instruction in 4.6, then this portion of 4.7 focusing on damages must be presented together with the substantive instruction from 4.7 which Defendants propose above as a separate instruction, as there is no legal authority to split up the instruction in this manner.  It must also include the special interrogatories which are part of the pattern instruction which Defendants have removed without citing any supporting legal authority. Nominal damages are recoverable pursuant to *Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 118 S. Ct. 2275, 2280 (1998); *Henson v. Dundee*, 682 F.2d 897, 905 (11th Cir. 1982).  Compensatory or nominal damages are not a prerequisite to an award of punitive damages.  *EEOC v. W & O, Inc.*, 36 F. Supp. 2d 1348, 1350 (S.D. Fla. 1998) aff'd *United States EEOC v. W&O Inc.*, 213 F.3d 600, 615 (11th Cir. 2000).  Regarding punitive damages awarded against large companies, please see *Pullum v. Ford Motor Co.*, No. 2:19-cv-120-ECM, 2019 U.S. Dist. LEXIS 104097, at *5 (M.D. Ala. June 21, 2019) *(citing Roe v. Michelin N. Am. Inc.*, 637 F.Supp.2d 995, 998 (M.D. Ala. 2009), *aff'd*, 613 F.3d 1058 (11th Cir. 2013) ("[W]hen considering claims for punitive damages against large companies, it is clear that 'any award that is soundly and honestly calculated to punish and deter a large company's wanton behavior …would have to be substantial.'"); *See also Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320 (11th Cir. 1999) (noting that "[a] bigger award is needed to 'attract the . . . attention' of a large corporation'" and approving a punitive damages award where ratio of punitive to compensatory damages was 100:1).

**Defendants' response to Plaintiff's Objection:   As Defendants briefed in their Omnibus Motion *in Limine* (Dkt. No.  146 at 9-10), and in their Motion for Summary Judgment (Dkt. No. 67 at 2, 5, 19), Plaintiff has not presented any evidence and has not met her burden of establishing that Soto is a "supervisor," as that term is defined under <u>Vance v. Ball State University</u>, 570 U.S. 421 (2013).  The fact that Soto was Plaintiff's direct report is not relevant to the determination of whether he was a "supervisor" within the meaning of Title VII because that is a term of art that requires that Soto have had the ability to hire, fire, discipline, promote, or reassign Plaintiff, which he did not.  Even if Defendants had admitted to Soto having been a supervisor in their Answer, the parties have filed a a pretrial statement in this case, and that "pretrial statement supersedes the pleadings and like the pleadings, puts the parties on notice of the issues to be tried." <u>Delta Health Group Inc. v. Royal</u>**

**Surplus Lines Ins. Co.**, 327 F. App'x 860, 867 (11th Cir. 2009).  In response to Plaintiff's objection, Plaintiff's attempt to instruct the jury on punitive damages is improper since she does not have any evidentiary basis for recovery of punitive damages.  Plaintiff has raised no evidence to support that Defendants have engaged in "discriminatory practices with malice or with reckless indifference" to her federally protected rights, and Plaintiff has failed to support submitting the issue of punitive damages to the jury.  Plaintiff's requested instruction is not substantially correct because it has no legal support and because it has no basis in the evidence. **Reppert v. I.R.S.**, 418 F. App'x 897, 899 (11th Cir. 2011) (citing **United States v. Terebecki**, 692 F.2d 1345, 1351 (11th Cir.1982); **Anderson v. Liberty Lobby Inc.**, 477 U.S. 242 (1986) (no requirement that question be submitted to jury unless proffered evidence sufficient to warrant decision favorable to requesting party)).

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 4.7 (modified).

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 4.8**
**TITLE VII – CIVIL RIGHTS ACT – WORKPLACE HARASSMENT UNWELCOME**
**SEXUAL ADVANCES - TANGIBLE EMPLOYMENT ACTION TAKEN**
*[OPPOSED]*

In this case, Plaintiff claims that Defendants, through the actions of Anibal Soto and Luis Roldan, violated Federal Civil Rights statutes that prohibit employers from discriminating against employees in the terms and conditions of employment because of the employee's sex. These statutes prohibit sexual harassment that culminates in an adverse tangible employment action.

Specifically, Plaintiff claims that Mr. Anibal Soto discriminated against her by making unwelcome sexual advances toward her and that Mr. Anibal Soto took an adverse tangible employment action against her because she rejected those unwelcome advances.

Plaintiff further claims that Mr. Luis Roldan provided benefits to employees who engaged in sexually suggestive interactions with him, which benefits were not provided to Plaintiff because she refused to engage in such conduct. She claims that Mr. Luis Roldan engaged in an affair with a non-managerial employee and, as a result, provided the employee with benefits and privileges not available to others as well as access to confidential management information to the detriment of all other employees. Plaintiff contends that by withholding from her those benefits and privileges afforded to those who acquiesced to Mr. Luis Roldan's advances, Mr. Luis Roldan took an adverse tangible employment against her.

Defendants deny Plaintiff's claim and asserts that the alleged sexual harassment is not sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment; that Mr. Soto is not Plaintiff's supervisor because he does not have the

ability to hire, fire, discipline, promote, or reassign Plaintiff; that even if Mr. Soto were a supervisor under Title VII, Defendants exercised reasonable care to prevent and promptly correct harassment in the workplace, that Plaintiff unreasonably failed to avail herself of those corrective opportunities in a timely manner; and that Plaintiff has failed to show that Defendants' alleged acts proximately caused her any damages.

To succeed on her claim against Defendants, Plaintiff must prove each of the following facts by a preponderance of the evidence:

First:   Mr. Anibal Soto and/or Mr. Luis Roldan made unwelcome sexual advances toward Plaintiff;

Second:  Mr. Anibal Soto and/or Mr. Luis Roldan took an adverse tangible employment action against Plaintiff;

Third:   Plaintiff's rejection of the unwelcome sexual advances was a motivating factor that prompted Mr. Anibal Soto to take the adverse tangible employment action, and/or her refusal to engage in sexually suggestive interactions or sexual affairs was a motivating factor that prompted Mr. Luis Roldan to take the adverse tangible employment action; and

Fourth:  Plaintiff suffered damages because of the adverse tangible employment action;

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

A tangible employment action is a significant change in employment status. If you find that Mr. Anibal Soto re-assigned certain of Plaintiff's accounts, failed to maintain other accounts of hers, and refused to adjust her sales budget to reflect her lost accounts, depriving her of compensation entitlements, you have found that Mr. Anibal Soto took an adverse "tangible employment action" against Plaintiff, and you must decide whether Plaintiff's rejection of Mr. Anibal Soto's unwelcome sexual advances was a motivating factor that prompted Mr. Anibal Soto to take the tangible employment action. To prove

that her rejection of Mr. Anibal Soto's unwelcome sexual advances was a motivating factor in Mr. Anibal Soto's decision, Plaintiff does not have to prove that her rejection of the unwelcome sexual advances was the only reason that Mr. Anibal Soto took the adverse tangible employment action. It is enough if Plaintiff proves that her rejection of the unwelcome sexual advances influenced the decision. If Plaintiff's rejection of Mr. Anibal Soto's unwelcome sexual advances made a difference in Mr. Anibal Soto's decision, you may find that it was a motivating factor in the decision.

If you find that Mr. Luis Roldan refused to provide certain benefits to Plaintiff that he provided to employees who engaged in sexually suggestive interactions with him and/or engaged in affairs with him, to Plaintiff's detriment, you have found that Mr. Luis Roldan took an adverse "tangible employment action" against Plaintiff, and you must decide whether Plaintiff's refusal to engage in sexually suggestive interactions or in a sexual affair with Mr. Luis Roldan was a motivating factor that prompted Mr. Luis Roldan to take the tangible employment action. To prove that her refusal to engage in sexually suggestive interactions or in a sexual affair with Mr. Luis Roldan was a motivating factor in Mr. Luis Roldan's decision, Plaintiff does not have to prove that her refusal to engage in such conduct was the only reason that Mr. Luis Roldan took the adverse tangible employment action. It is enough if Plaintiff proves that her refusal to engage in such conduct influenced the decision. If Plaintiff's refusal to engage in such conduct made a difference in Mr. Luis Roldan's decision, you may find that it was a motivating factor in the decision.

Unlawful sexual harassment may take the form of unwelcome sexual advances, and it is unlawful for a supervisor to change – or threaten to change – the terms and

conditions of an employee's employment to force or coerce, or to attempt to force or coerce, sexual favors from the employee.

A supervisor's demand or threat for sexual favors must be (1) one that a reasonable person would regard as a real or serious effort by the supervisor to gain a sexual favor, and (2) unwelcome to the employee. That means that the employee did not expressly or implicitly welcome or invite the sexual advances, and the employee regarded the supervisor's conduct as undesirable or offensive. [The fact that an employee may have consented to engaging in sex-related conduct in response to a demand or threat does not, by itself, establish that the employee invited or welcomed the conduct. But it is one of the factors you may consider.]

**Including Affirmative Defense:** If you find that Plaintiff's rejection of Mr. Anibal Soto's unwelcome sexual advances was a motivating factor that prompted Mr. Anibal Soto to take an adverse tangible employment action, you must decide whether Defendants have shown by a preponderance of the evidence that he would have re-assigned Plaintiff's clients and refused to adjust her sales budget to reflect her lost accounts, depriving her of compensation entitlements even if Mr. Anibal Soto had not taken Plaintiff's rejection of the unwelcome sexual advances into account. If you find that Plaintiff's clients would have been re-assigned and Mr. Anibal Soto did not adjust her sales budgets for reasons other than her rejection of Mr. Anibal Soto's unwelcome sexual advances, you must make that finding in your verdict.

If you find that Plaintiff's refusal to engage in sexually suggestive interactions or in a sexual affair with Mr. Luis Roldan was a motivating factor that prompted Mr. Luis Roldan to take an adverse tangible employment action, you must decide whether Defendants

have shown by a preponderance of the evidence that he would have refused to provide those same benefits to Plaintiff even if Mr. Luis Roldan had not taken Plaintiff's refusal to engage in such conduct into account. If you find that Plaintiff would not have received those benefits for reasons other than her refusal to engage in sexually suggestive interactions or in a sexual affair with Mr. Luis Roldan, you must make that finding in your verdict.

If you find for Plaintiff and against Defendants on this defense, you must decide whether Plaintiff suffered damages because of the adverse tangible employment action.

If the damages would not have existed except for the adverse tangible employment action, then you may find that Plaintiff suffered those damages because of the adverse tangible employment action. If you find that Plaintiff suffered damages because of the adverse tangible employment action, you must decide the issue of Plaintiff's damages.

When considering the issue of Plaintiff's compensatory damages, you should determine what amount, if any, has been proven by Plaintiff by a preponderance of the evidence as full, just and reasonable compensation for all of Plaintiff's damages as a result of the adverse tangible employment action, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Defendants. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Plaintiff has proved them by a preponderance of the evidence, and no others:

(a) net lost wages and benefits from the date of the adverse tangible employment action to the date of your verdict; and
(b) emotional pain and mental anguish.

To determine the amount of Plaintiff's net lost wages and benefits, you should consider evidence of the actual wages she lost and the monetary value of any benefits she lost.

To determine whether and how much Plaintiff should recover for emotional pain and mental anguish, you may consider both the mental and physical aspects of injury – tangible and intangible. Plaintiff does not have to introduce evidence of a monetary value for intangible things like mental anguish. You must determine what amount will fairly compensate her for those claims. There is no exact standard to apply, but the award should be fair in light of the evidence.

**Nominal Damages:**  Nominal damages are a minimal sum of money awarded to a plaintiff whose legal rights have been technically violated but who has not established that he or she is entitled to compensatory damages because there was no accompanying loss or harm.   If you determine that the evidence does not support an award of compensatory damages for Plaintiff, but that her legal rights were violated by the actions of Defendants, you may still award her nominal damages.

**Mitigation of Damages:** You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Plaintiff to be reasonably diligent in seeking substantially equivalent employment to the position she held with Defendants. To prove that Plaintiff failed to mitigate damages, Defendants must prove by a preponderance of the evidence that: (1) work comparable to the position Plaintiff held with Defendants was available, and (2) Plaintiff did not make reasonably diligent efforts to obtain it. If, however, Defendants show that Plaintiff did not

make reasonable efforts to obtain any work, then Defendants do not have to prove that comparable work was available.

If you find that Defendants proved by a preponderance of the evidence that Plaintiff failed to mitigate damages, then you should reduce the amount of Plaintiff's damages by the amount that could have been reasonably realized if Plaintiff had taken advantage of an opportunity for substantially equivalent employment.

**Punitive Damages:** Plaintiff also asks you to award punitive damages. The purpose of punitive damages is not to compensate Plaintiff but, instead, to punish Defendants for wrongful conduct and to deter similar wrongful conduct. You can award punitive damages even if you determine that Plaintiff is not entitled to any compensatory damages or damages for pain and suffering.

To be entitled to an award of punitive damages Plaintiff must prove by a preponderance of the evidence that Defendants acted with either malice or with reckless indifference toward Plaintiff's federally protected rights. Specifically, Plaintiff must show that an employee of Defendants, acting in a managerial capacity, either acted with malice or with reckless indifference to Plaintiff's federally protected rights.

There is no bright-line rule about which employees act in a managerial capacity. You must determine whether an employee acted in a "managerial capacity" based upon the type of authority Defendants gave the employee and the amount of discretion that the employee has in what is done and how it is accomplished.

To show that Defendants acted with malice, Plaintiff must show that an employee acting in a managerial capacity knew that federal law prohibits discrimination and discriminated against Plaintiff anyway. To show that Defendants acted with reckless

indifference to Plaintiff's federally protected rights, Plaintiff must show that an employee acting in a managerial capacity acted with serious disregard for whether the conduct violated federal law. Either malice or reckless indifference is sufficient to entitle Plaintiff to an award of punitive damages; Plaintiff need not prove both.

An employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where the managerial employees' acts are contrary to the employer's good faith efforts to comply with the law by implementing policies and programs designed to prevent unlawful discrimination in the workplace. However, the mere existence of policies prohibiting discrimination does not preclude punitive damages if the policies are ineffective.

There is no single factor that determines whether Defendants acted with malice or with reckless indifference to Plaintiff's federally protected rights. In determining whether to award punitive damages, you may consider factors such as: (1) whether Defendants engaged in a pattern of discrimination toward its employees; (2) whether Defendants acted spitefully or malevolently; (3) whether Defendants showed a blatant disregard for civil legal obligations; (4) whether Defendants failed to investigate reports of discrimination; (5) whether Defendants failed to take corrective action concerning discriminatory acts or comments by their employees; and (6) whether the person accused of discrimination was included in the decision making process of the Defendants concerning the handling of the investigation and/or any course of action relative to Plaintiff following its conclusion.

If you find that punitive damages should be assessed against Defendants, you may consider the evidence regarding Defendants' financial resources in fixing the amount of

such damages.  In this regard, if you find that punitive damages are warranted and that Defendants are large companies, the award of punitive damages would have to be substantial in order to punish Defendants for their wrongful conduct and to deter similar wrongful conduct.

SPECIAL INTERROGATORIES TO THE JURY

**Do you find from a preponderance of the evidence:**

1. That Mr. Anibal Soto made unwelcome sexual advances toward Plaintiff and/or that Mr. Luis Roldan attempted to engage in sexually suggestive action toward Plaintiff?

Answer Yes or No          _____

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

2. That Mr. Anibal Soto and/or Mr. Luis Roldan took an adverse tangible employment action against her?

Answer Yes or No          _____

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

3. That Plaintiff's rejection of the unwelcome sexual advances by Mr. Anibal Soto or her rejection of the attempts by Mr. Luis Roldan to engage in sexually suggestive interactions was a motivating factor that prompted either of them to take the adverse tangible employment action?

Answer Yes or No            _____

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

4. That Mr. Anibal Soto would have re-assigned certain of Plaintiff's accounts, failed to maintain other accounts of hers, and refused to adjust her sales budget to reflect her lost accounts, depriving her of compensation entitlements, even if Mr. Anibal Soto had not taken Plaintiff's rejection of the unwelcome sexual advances into account, and/or that Mr. Luis Roldan would have refused to provide certain benefits to Plaintiff that he provided to employees who engaged in sexually suggestive interactions with him and/or engaged in affairs with him, even if Mr. Luis Roldan had not taken Plaintiff's refusal to engage in such conduct into account?

Answer Yes or No            _____

If your answer is "Yes," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "No," go to the next question.

5. That Plaintiff suffered damages because of the adverse tangible employment action?

Answer Yes or No            _____

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

6. That Plaintiff should be awarded damages to compensate for a net loss of wages and benefits to the date of your verdict?

              Answer Yes or No       _____

              If your answer is "Yes,"
              in what amount?      $_____

7. That Plaintiff should be awarded damages to compensate for emotional pain and mental anguish?

              Answer Yes or No       _____

              If your answer is "Yes,"
              in what amount?      $_____

If your answer is "Yes," to Question No. 6 and/or 7, go to Question No. 9. If you answer is "No" to Questions No. 6 and 7, go to the next question.

8. That nominal damages should be assessed against Defendants?

              Answer Yes or No       _____

              If your answer is "Yes,"
in what amount?      $_____

9. That punitive damages should be assessed against Defendants?

              Answer Yes or No       _____

              If your answer is "Yes,"
               in what amount?      $_____]

So Say We All.

              _____
              Foreperson's Signature

Date: _____

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 4.8 (modified)
*Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 118 S. Ct. 2275, 2280 (1998); *Henson v. Dundee*, 682 F.2d 897, 905 (11th Cir. 1982); *EEOC v. W & O, Inc.*, 36 F. Supp. 2d 1348, 1350 (S.D. Fla. 1998) aff'd *United States EEOC v. W & O Inc.*, 213 F.3d 600, 615 (11th Cir. 2000); *Pullum v. Ford Motor Co.*, No. 2:19-cv-120-ECM, 2019 U.S. Dist. LEXIS 104097, at *5 (M.D. Ala. June 21, 2019) *(citing Roe v. Michelin N. Am. Inc.*, 637 F.Supp.2d 995, 998 (M.D. Ala. 2009), *aff'd*, 613 F.3d 1058 (11th Cir. 2013); *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320 (11th Cir. 1999).

**Defendants' Objection:** Defendants object to this instruction in its entirety. First, Plaintiff should be prohibited from claiming damages on two separate occasions, given that she has one remaining claim of hostile work environment sexual harassment under Title VII and FCRA, which are analyzed under the same analytical framework as Title VII. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010).  Additionally, as Defendants briefed in pages 5-9 of their Omnibus Motion *in Limine* (Dkt. No.  146), Plaintiff's sole remaining claim is one for hostile work environment sexual harassment, and it was not until Plaintiff's response to Defendants' Motion for Summary Judgment (Dkt. No. 80), did Plaintiff attempt to revive her retaliation claim by claiming she suffered a "tangible employment action," thereby attempting to convert her hostile work environment claim into one for *quid pro quo* sexual harassment and/or disparate treatment sex discrimination. See, Pattern Jury Instructions, Civil Cases, Eleventh Circuit 4.8 Annotations (noting that a "tangible employment action" sexual harassment claim is "also called 'quid pro quo' claim"). Additionally, Plaintiff has not so much as alleged the existence of a "'tangible employment action," which is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006).  However, even if she had, Plaintiff's own Amended Complaint makes clear that the alleged retaliatory acts relating to her allegedly having her accounts reassigned, not having her budget readjusted, having her clients purposefully neglected, and having her request to work from home denied are all "retaliatory" acts that solely support her now dismissed retaliation claim. (Dkt. No. 146 at 5-9). Defendants further object to this instruction because Plaintiff testified that the only action on the part of Luis Roldan that supported her claim was a single instance in which Roldan introduced a female station employee as "the most beautiful and sexy woman of the station," and Plaintiff admitted that she could not identify any other comments or acts on the part of Roldan that she believed were sexually inappropriate or otherwise supported her claim. (Dkt. No. 67 at 13). Plaintiff's requested instruction is not substantially correct because it has no legal support and because it has no basis in the evidence. Reppert v. I.R.S., 418 F. App'x 897, 899 (11th Cir. 2011) (citing United States v. Terebecki, 692 F.2d 1345, 1351 (11th Cir.1982); Anderson v. Liberty Lobby Inc., 477 U.S. 242 (1986) (no requirement that question be submitted to jury unless proffered evidence sufficient to warrant decision favorable to requesting party)). Defendants further object to Plaintiff's proposed instruction regarding back and front pay damages because Plaintiff does not have any evidence to support that any alleged discrimination caused her inability to work. Instead,

Plaintiff admits that she has been unable to work since November 12, 2019 as a result of the many surgeries she had following a non-work-related car accident. Additionally, as raised in Defendants' Omnibus Motion *in Limine*, Plaintiff should also be precluded from raising argument and/or testimony regarding any alleged "rumors" that are entirely hearsay without exception, including the alleged "rumor" that Roldan was in an extramarital relationship with Heidi Rodriguez, which Plaintiff's husband, Dominick Cicale, used as a pretextual reason to contact Roldan's wife during the course of this litigation. (Dkt. No. 146 at 18-19).  It is clear that Plaintiff has not presented any evidence to support her position that Roldan was engaged "in a sexual affair," (see, e.g., Dkt. No. 116 at 73:18-20, 111:2-4), and this instruction is only an attempt to inflame the jury.  Defendants further object to this instruction because, as Defendants raised in their Omnibus Motion *in Limine*, each of the acts alleged in this instruction are acts that Plaintiff claimed supported her long dismissed retaliation claim, and in no way relate to her hostile work environment sexual harassment claim, which only relates to whether Plaintiff was subjected to unwelcome harassment that was sufficiently severe or pervasive enough to alter the terms and conditions of Plaintiff's employment. (Dkt. No. 146 at 5-10). This instruction is cumulative and duplicative of the other instructions given, and unduly emphases Plaintiff's sole remaining claim of hostile work environment sexual harassment, which is likely to confuse the jury as to claim it is deciding.  See, e.g., Lithgow Funeral Centers v. Loftin, 60 So. 2d 745, 747 (Fla. 1952) ("There is no reason for saying the same thing more than once except for the purpose of adding emphasis to the statement. This Court has criticised [sic] such undue emphasis in a number of cases."); Wilkinson v. Grover, 181 So. 2d 591, 594 (Fla. 3d DCA 1965) (three full charges on the subject of contributory negligence and a reference to it in five others as undue emphasis). Additionally, Defendants object to Plaintiff's modifications of the pattern instruction.

Defendants further object to Plaintiff's claim that punitive damages may be awarded even if compensatory damages are not, which is not an accurate recitation of the law and fails to comply with the pattern jury instructions, which specifically requires compensatory damages before punitive damages can be considered. In State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003), the Supreme Court held that few awards exceeding a single digit ratio between punitive and compensatory damages will satisfy due process.  Defendants further object to Plaintiff's proposed instruction on punitive damages in its entirety because Plaintiff's attempt to instruct the jury on punitive damages is improper since she does not have any evidentiary basis for recovery of punitive damages.  Plaintiff has raised no evidence to support that Defendants have engaged in "discriminatory practices with malice or with reckless indifference" to her federally protected rights, and Plaintiff has failed to support submitting the issue of punitive damages to the jury.   Defendants further object to Plaintiff's proposed instruction regarding back and front pay damages because Plaintiff does not have any evidence to support that any alleged discrimination caused her inability to work. Instead, Plaintiff admits that she has been unable to work since November 12, 2019 as a result of the many surgeries she had following a non-work-related car accident.  Plaintiff's requested instruction is not substantially correct because it has no legal support and because it has no basis in the evidence. Reppert v. I.R.S., 418 F. App'x 897, 899 (11th Cir. 2011) (citing United States v. Terebecki, 692 F.2d 1345, 1351 (11th Cir.1982); Anderson v. Liberty

Lobby Inc., 477 U.S. 242 (1986) (no requirement that question be submitted to jury unless proffered evidence sufficient to warrant decision favorable to requesting party)). Defendants also object to Plaintiff's modifications of the pattern instruction, including her inclusion the "nominal" damages instruction, which is not part of this pattern instruction, was not pled in her Amended Complaint (Dkt. No. 31), and which is not available to Plaintiff because proving damages is a necessary element of her claim. Plaintiff's citation to Faragher v. City of Boca Raton, 524 U.S. 775, 780, 118 S. Ct. 2275, 2280 (1998) is inapposite, because the plaintiff in that case specifically "sought a judgment against the City for nominal damages[.]" Defendants further object to Plaintiff's use of this proposed instruction because it directly conflicts with Plaintiff's proposed instruction number 17, above.

**Plaintiff's response:**   Defendants seek to avoid having separate instructions for the federal and state claims set forth in the Amended Complaint, citing to *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010), as support for same. *Alvarez* does not support this contention, however. Instead, *Alvarez* merely mentioned in dicta that separate analysis of a parallel state law claim was not necessary in reviewing a lower court's ruling on a summary judgment motion. It did not speak to the issue of jury instructions. Defendants' other objections all relate to evidentiary issues which fall within the scope of the jury's determination. In other words, the jury will determine if there is sufficient evidence to support the various claims and defenses.

Defendants further attempt to avoid the instruction in connection with their attempt to limit evidence such that any example of an adverse employment action may only be considered in connection with the previously dismissed retaliation claim, which position is in no way supported by applicable law. *See Fredette v. BVP Mgmt. Assocs.*, Case No. 94-325-Civ-Orl-18, 1995 U.S. Dist. LEXIS 13954, at *9 (M.D. Fla. July 6, 1995) (reversed on other grounds) ("Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when . . . submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual"). Despite their contention that Plaintiff's claim is limited only to "hostile work environment," Plaintiff's claim is limited only by the facts alleged and the provisions of Title VII which recognize both hostile work environment and quid pro quo actions. Further, Defendants have specifically raised affirmative defenses to the allegedly unpled "*quid pro quo* sexual harassment and/or disparate treatment sex discrimination" claims.

The interrogatories are part of the pattern instruction and will remain absent any legal authority for removing them. Nominal damages are recoverable pursuant to *Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 118 S. Ct. 2275, 2280 (1998); *Henson v. Dundee*, 682 F.2d 897, 905 (11th Cir. 1982). Compensatory or nominal damages are not a prerequisite to an award of punitive damages. *EEOC v. W & O, Inc.*, 36 F. Supp. 2d 1348, 1350 (S.D. Fla. 1998) aff'd *United States EEOC v. W&O Inc.*, 213 F.3d 600, 615 (11th Cir. 2000). Regarding punitive damages awarded against large companies, please

see *Pullum v. Ford Motor Co.*, No. 2:19-cv-120-ECM, 2019 U.S. Dist. LEXIS 104097, at *5 (M.D. Ala. June 21, 2019) *(citing Roe v. Michelin N. Am. Inc.*, 637 F.Supp.2d 995, 998 (M.D. Ala. 2009), *aff'd*, 613 F.3d 1058 (11th Cir. 2013) ("[W]hen considering claims for punitive damages against large companies, it is clear that 'any award that is soundly and honestly calculated to punish and deter a large company's wanton behavior …would have to be substantial.'"); *See also Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320 (11th Cir. 1999) (noting that "[a] bigger award is needed to 'attract the . . . attention' of a large corporation'" and approving a punitive damages award where ratio of punitive to compensatory damages was 100:1).

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 417.2**
**SUMMARY OF CLAIMS AND DEFENSES (FLORIDA CIVIL RIGHTS ACT)**
*[OPPOSED]*

In this case, Plaintiff claims that Defendants discriminated against her by subjecting her to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; re-assigning certain of Plaintiff's accounts, failing to maintain other accounts of hers, and refusing to adjust her sales budget to reflect her lost accounts, depriving her of compensation entitlements; refusing to accommodate her while on medical leave; and treating her with hostility upon her return from medical leave. and a hostile work environment, all because of Plaintiff's sex, and that such discriminatory treatment caused her damage.

Defendants deny that claim.

Plaintiff must prove her claim by the greater weight of the evidence. I will now define some of the terms you will use in deciding this case.


**AUTHORITY**:
Florida Standard Jury Instructions, Section 417.2

**Defendant's Objection:**  Defendants object to this instruction in its entirety.  This is a state court pattern instruction, not a federal court pattern instruction, despite federal law (not state law) governing the manner in which jury instructions are given. McCullough v. Beech Aircraft Corp., 587 F.2d 754, 759 (5th Cir. 1979).  The Florida Civil Rights Act is modeled after Title VII and, therefore, claims brought under the FCRA are analyzed under the same analytical framework as Title VII. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010).  This instruction is cumulative and duplicative of the other instructions given, and unduly emphases Plaintiff's sole remaining claim of hostile work environment sexual harassment, which is likely to confuse the jury as to claim it is deciding.  See, e.g., Lithgow Funeral Centers v. Loftin, 60 So. 2d 745, 747 (Fla. 1952) ("There is no reason for saying the same thing more than once except for the purpose of adding emphasis to the statement. This Court has criticised [sic] such undue emphasis in a number of cases."); Wilkinson v. Grover, 181 So. 591, 594 (Fla. 3d DCA 1965) (three full charges on the subject of contributory negligence and a reference to it in five others

was undue emphasis); Smith v. City of New Smyrna Beach, 588 F. App'x 965, 973 (11th Cir. 2014) (Eleventh Circuit pattern jury instruction given for both Title VII and FCRA retaliation claim).

**Plaintiff's response:**   Defendants seek to avoid having separate instructions for the federal and state claims set forth in the Amended Complaint, citing to *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010), as support for same.  *Alvarez* does not support this contention, however.  Instead, *Alvarez* merely mentioned in dicta that separate analysis of a parallel state law claim was not necessary in reviewing a lower court's ruling on a summary judgment motion.  It did not speak to the issue of jury instructions.  Defendants further rely on *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir. 1979) as additional support for their contention that the state claims should not have separate instructions.  Once again, however, Defendants have mischaracterized the meaning of their cited authority.  *McCullough* involved a products liability and wrongful death action arising from the crash of a small plane.  While the court did, as Defendants state, provide that federal law governs the procedural matter of providing jury instructions, the case did not involve any instructions on state law and the court did not address such issues.  Defendants also cite to *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 973 (11th Cir. 2014), claiming that the trial court gave the Eleventh Circuit pattern jury instruction for both Title VII and FCRA retaliation claims.  The opinion, however, never indicates that any state law instructions were proposed.  Instead, the issue was focused on the content of the particular instruction, not whether a state law instruction should have been given.  *Id.*  In fact, the court's subsequent analysis of the instructions that were provided had nothing to do with the propriety of including separate instructions for state law claims.  *Id.*, at 983.  In other words, the cases cited by Defendants for their argument against having separate instructions for the federal and state claims offer them no support whatsoever.

Accepted:
Rejected:
Withdrawn:
Given as Amended:_____

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 417.3**
**GREATER WEIGHT OF THE EVIDENCE (FLORIDA CIVIL RIGHTS ACT)**
*[OPPOSED]*

"Greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

**AUTHORITY:**
Florida Standard Jury Instructions, Section 417.3

**Defendants' Objection:**   Defendants object to this instruction in its entirety.   This is a state court pattern instruction, not a federal court pattern instruction, despite federal law (not state law) governing the manner in which jury instructions are given. McCullough v. Beech Aircraft Corp., 587 F.2d 754, 759 (5th Cir. 1979).  The Florida Civil Rights Act is modeled after Title VII and, therefore, claims brought under the FCRA are analyzed under the same analytical framework as Title VII. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010).  This instruction is cumulative and duplicative of the other instructions given, and unduly emphases Plaintiff's sole remaining claim of hostile work environment sexual harassment, which is likely to confuse the jury as to claim it is deciding. See, e.g., Lithgow Funeral Centers v. Loftin, 60 So. 2d 745, 747 (Fla. 1952) ("There is no reason for saying the same thing more than once except for the purpose of adding emphasis to the statement. This Court has criticised [sic] such undue emphasis in a number of cases."); Wilkinson v. Grover, 181 So. 2d 591, 594 (Fla. 3d DCA 1965) (three full charges on the subject of contributory negligence and a reference to it in five others was undue emphasis); Smith v. City of New Smyrna Beach, 588 F. App'x 965, 973 (11th Cir. 2014) (Eleventh Circuit pattern jury instruction given for both Title VII and FCRA retaliation claim).

**Plaintiff's response:**   Defendants seek to avoid having separate instructions for the federal and state claims set forth in the Amended Complaint, citing to *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010), as support for same.  *Alvarez* does not support this contention, however.  Instead, *Alvarez* merely mentioned in dicta that separate analysis of a parallel state law claim was not necessary in reviewing a lower court's ruling on a summary judgment motion.  It did not speak to the issue of jury instructions.  Defendants further rely on *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir. 1979) as additional support for their contention that the state claims should not have separate instructions.  Once again, however, Defendants have mischaracterized the meaning of their cited authority.  *McCullough* involved a products liability and wrongful death action arising from the crash of a small plane.  While the court

did, as Defendants state, provide that federal law governs the procedural matter of providing jury instructions, the case did not involve any instructions on state law and the court did not address such issues.  Defendants also cite to *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 973 (11th Cir. 2014), claiming that the trial court gave the Eleventh Circuit pattern jury instruction for both Title VII and FCRA retaliation claims.  The opinion, however, never indicates that any state law instructions were proposed.  Instead, the issue was focused on the content of the particular instruction, not whether a state law instruction should have been given.  *Id.*  In fact, the court's subsequent analysis of the instructions that were provided had nothing to do with the propriety of including separate instructions for state law claims.  *Id.*, at 983.  In other words, the cases cited by Defendants for their argument against having separate instructions for the federal and state claims offer them no support whatsoever.

Accepted:
Rejected:
Withdrawn:
Given as Amended:

Case 6:20-cv-01157-WWB-LHP   Document 160   Filed 04/19/22   Page 66 of 87 PageID 8373

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 417.4**
**DISCRIMINATION**
**(FLORIDA CIVIL RIGHTS ACT)**
*[OPPOSED]*

To "discriminate" means to:

(a) treat an employee differently with regard to compensation, terms, conditions, or privileges of employment; or

(b) create a hostile work environment for an employee

because of the employee's sex.


**AUTHORITY:**
Florida Standard Jury Instructions, Section 417.4 (modified)
*City of W. Palm Beach v. McCray*, 91 So. 3d 165, 173 (Fla. 4th DCA 2012) (noting that "discrimination" can include creating a hostile work environment).

**Defendants' Objection:**  Defendants object to this instruction in its entirety. This is a state court pattern instruction, not a federal court pattern instruction, despite federal law (not state law) governing the manner in which jury instructions are given. McCullough v. Beech Aircraft Corp., 587 F.2d 754, 759 (5th Cir. 1979).  The Florida Civil Rights Act is modeled after Title VII and, therefore, claims brought under the FCRA are analyzed under the same analytical framework as Title VII. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010).  This instruction is cumulative and duplicative of the other instructions given, and unduly emphases Plaintiff's sole remaining claim of hostile work environment sexual harassment, which is likely to confuse the jury as to claim it is deciding.    See, e.g., Lithgow Funeral Centers v. Loftin, 60 So. 2d 745, 747 (Fla. 1952) ("There is no reason for saying the same thing more than once except for the purpose of adding emphasis to the statement. This Court has criticised [sic] such undue emphasis in a number of cases."); Wilkinson v. Grover, 181 So. 591, 594 (Fla. 3d DCA 1965) (three full charges on the subject of contributory negligence and a reference to it in five others was undue emphasis); Smith v. City of New Smyrna Beach, 588 F. App'x 965, 973 (11th Cir. 2014) (Eleventh Circuit pattern jury instruction given for both Title VII and FCRA retaliation claim). Additionally, as Defendants briefed in pages 5-9 of their Omnibus Motion *in Limine* (Dkt. No.  146), Plaintiff's sole remaining claim is one for hostile work environment sexual harassment, and it was not until Plaintiff's response to Defendants' Motion for Summary Judgment (Dkt. No. 80), did Plaintiff attempt to revive her retaliation claim by claiming she suffered a "tangible employment action," thereby attempting to convert her hostile work environment claim into one for *quid pro quo* sexual harassment and/or disparate treatment sex discrimination. See, Pattern Jury Instructions, Civil Cases, Eleventh Circuit 4.8 Annotations (noting that a "tangible employment action" sexual harassment claim is "also called 'quid pro quo'" claim"). Additionally, Plaintiff has not so

much as alleged the existence of a "'tangible employment action," which is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006).   However, even if she had, Plaintiff's own Amended Complaint makes clear that the alleged retaliatory acts relating to her allegedly having her accounts reassigned, not having her budget readjusted, having her clients purposefully neglected, and having her request to work from home denied are all "retaliatory" acts that solely support her now dismissed retaliation claim. (Dkt. No. 146 at 5-9).  Defendants also object to Plaintiff's modifications of the pattern instruction, including her change of the definition of to "discriminate," which is based upon a misreading of City of W. Palm Beach v. McCray, 91 So. 3d 165, 173 (Fla. 4th DCA 2012).

**Plaintiff's response:**   Defendants seek to avoid having separate instructions for the federal and state claims set forth in the Amended Complaint, citing to *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010), as support for same.  *Alvarez* does not support this contention, however.  Instead, *Alvarez* merely mentioned in dicta that separate analysis of a parallel state law claim was not necessary in reviewing a lower court's ruling on a summary judgment motion.  It did not speak to the issue of jury instructions.  Defendants further rely on *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir. 1979) as additional support for their contention that the state claims should not have separate instructions.  Once again, however, Defendants have mischaracterized the meaning of their cited authority.  *McCullough* involved a products liability and wrongful death action arising from the crash of a small plane.  While the court did, as Defendants state, provide that federal law governs the procedural matter of providing jury instructions, the case did not involve any instructions on state law and the court did not address such issues.  Defendants also cite to *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 973 (11th Cir. 2014), claiming that the trial court gave the Eleventh Circuit pattern jury instruction for both Title VII and FCRA retaliation claims.  The opinion, however, never indicates that any state law instructions were proposed.  Instead, the issue was focused on the content of the particular instruction, not whether a state law instruction should have been given.  *Id.*  In fact, the court's subsequent analysis of the instructions that were provided had nothing to do with the propriety of including separate instructions for state law claims.  *Id.*, at 983.  In other words, the cases cited by Defendants for their argument against having separate instructions for the federal and state claims offer them no support whatsoever.

Defendants further attempt to avoid the instruction in connection with their attempt to limit evidence such that any example of an adverse employment action may only be considered in connection with the previously dismissed retaliation claim, which position is in no way supported by applicable law. *See Fredette v. BVP Mgmt. Assocs.*, Case No. 94-325-Civ-Orl-18, 1995 U.S. Dist. LEXIS 13954, at *9 (M.D. Fla. July 6, 1995) (reversed on other grounds) ("Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when . . . submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual"). Despite their contention that Plaintiff's

claim is limited only to "hostile work environment," Plaintiff's claim is limited only by the facts alleged and the provisions of the FCRA which recognize both hostile work environment and quid pro quo actions. Further, Defendants have specifically raised affirmative defenses to the allegedly unpled "*quid pro quo* sexual harassment and/or disparate treatment sex discrimination" claims.

See *City of W. Palm Beach v. McCray*, 91 So. 3d 165, 173 (Fla. 4th DCA 2012) (noting that "discrimination" can include creating a hostile work environment).

Accepted:
Rejected:
Withdrawn:
Given as Amended:

## PLAINTIFF'S PROPOSED JURY INSTRUCTION 417.5
## LEGAL CAUSE – DISCRIMINATION (FLORIDA CIVIL RIGHTS ACT)
### [OPPOSED]

Plaintiff's sex is the legal cause of Defendants' decisions to subject her to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; re-assign certain of Plaintiff's accounts, fail to maintain other accounts of hers, and refuse to adjust her sales budget to reflect her lost accounts, depriving her of compensation entitlements; refuse to accommodate her while on medical leave, and/or treat her with hostility upon her return from medical leave if Defendants made the decisions because of Plaintiff's sex.

**AUTHORITY:**
Florida Standard Jury Instructions, Section 417.5

**Defendants' Objections:**  Defendants object to this instruction in its entirety. This is a state court pattern instruction, not a federal court pattern instruction, despite federal law (not state law) governing the manner in which jury instructions are given. McCullough v. Beech Aircraft Corp., 587 F.2d 754, 759 (5th Cir. 1979).  The Florida Civil Rights Act is modeled after Title VII and, therefore, claims brought under the FCRA are analyzed under the same analytical framework as Title VII. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010).  This instruction is cumulative and duplicative of the other instructions given, and unduly emphases Plaintiff's sole remaining claim of hostile work environment sexual harassment, which is likely to confuse the jury as to claim it is deciding. See, e.g., Lithgow Funeral Centers v. Loftin, 60 So. 2d 745, 747 (Fla. 1952) ("There is no reason for saying the same thing more than once except for the purpose of adding emphasis to the statement. This Court has criticised [sic] such undue emphasis in a number of cases."); Wilkinson v. Grover, 181 So. 2d 591, 594 (Fla. 3d DCA 1965) (three full charges on the subject of contributory negligence and a reference to it in five others was undue emphasis); Smith v. City of New Smyrna Beach, 588 F. App'x 965, 973 (11th Cir. 2014) (Eleventh Circuit pattern jury instruction given for both Title VII and FCRA retaliation claim).  Additionally, as Defendants briefed in pages 5-9 of their Omnibus Motion *in Limine* (Dkt. No.  146), Plaintiff's sole remaining claim is one for hostile work environment sexual harassment, and it was not until Plaintiff's response to Defendants' Motion for Summary Judgment (Dkt. No. 80), did Plaintiff attempt to revive her retaliation claim by claiming she suffered a "tangible employment action," thereby attempting to convert her hostile work environment claim into one for *quid pro quo* sexual harassment and/or disparate treatment sex discrimination. See, Pattern Jury Instructions, Civil Cases,

Eleventh Circuit 4.8 Annotations (noting that a "tangible employment action" sexual harassment claim is "also called 'quid pro quo' claim"). Additionally, Plaintiff has not so much as alleged the existence of a "'tangible employment action," which is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006).   However, even if she had, Plaintiff's own Amended Complaint makes clear that the alleged retaliatory acts relating to her allegedly having her accounts reassigned, not having her budget readjusted, having her clients purposefully neglected, and having her request to work from home denied are all "retaliatory" acts that solely support her now dismissed retaliation claim. (Dkt. No. 146 at 5-9). Defendants further object to this instruction because, as Defendants raised in their Omnibus Motion *in Limine*, each of the acts alleged in this instruction are acts that Plaintiff claimed supported her long dismissed retaliation claim, and in no way relate to her hostile work environment sexual harassment claim, which only relates to whether Plaintiff was subjected to unwelcome harassment that was sufficiently severe or pervasive enough to alter the terms and conditions of Plaintiff's employment. (Dkt. No. 146 at 5-10). Plaintiff's requested instruction is not substantially correct because it has no legal support and because it has no basis in the evidence. Reppert v. I.R.S., 418 F. App'x 897, 899 (11th Cir. 2011) (citing United States v. Terebecki, 692 F.2d 1345, 1351 (11th Cir.1982); Anderson v. Liberty Lobby Inc., 477 U.S. 242 (1986) (no requirement that question be submitted to jury unless proffered evidence sufficient to warrant decision favorable to requesting party)).

**Plaintiff's response:**  Defendants seek to avoid having separate instructions for the federal and state claims set forth in the Amended Complaint, citing to *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010), as support for same.  *Alvarez* does not support this contention, however.  Instead, *Alvarez* merely mentioned in dicta that separate analysis of a parallel state law claim was not necessary in reviewing a lower court's ruling on a summary judgment motion.  It did not speak to the issue of jury instructions.  Defendants further rely on *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir. 1979) as additional support for their contention that the state claims should not have separate instructions.  Once again, however, Defendants have mischaracterized the meaning of their cited authority.  *McCullough* involved a products liability and wrongful death action arising from the crash of a small plane.  While the court did, as Defendants state, provide that federal law governs the procedural matter of providing jury instructions, the case did not involve any instructions on state law and the court did not address such issues.  Defendants also cite to *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 973 (11th Cir. 2014), claiming that the trial court gave the Eleventh Circuit pattern jury instruction for both Title VII and FCRA retaliation claims.  The opinion, however, never indicates that any state law instructions were proposed.  Instead, the issue was focused on the content of the particular instruction, not whether a state law instruction should have been given.  *Id.*  In fact, the court's subsequent analysis of the instructions that were provided had nothing to do with the propriety of including separate instructions for state law claims.  *Id.*, at 983.  In other words, the cases cited by Defendants for their argument against having separate instructions for the federal and

state claims offer them no support whatsoever. Defendants' objections based on evidentiary issues are improper, as the jury is being instructed to consider the evidence. If there is no evidence to support Plaintiff's claims, the jury will decide accordingly.

Defendants further attempt to avoid the instruction in connection with their attempt to limit evidence such that any example of an adverse employment action may only be considered in connection with the previously dismissed retaliation claim, which position is in no way supported by applicable law. *See Fredette v. BVP Mgmt. Assocs.*, Case No. 94-325-Civ-Orl-18, 1995 U.S. Dist. LEXIS 13954, at *9 (M.D. Fla. July 6, 1995) (reversed on other grounds) ("Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when . . . submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual"). Despite their contention that Plaintiff's claim is limited only to "hostile work environment," Plaintiff's claim is limited only by the facts alleged and the provisions of the FCRA which recognize both hostile work environment and quid pro quo actions. Further, Defendants have specifically raised affirmative defenses to the allegedly unpled "*quid pro quo* sexual harassment and/or disparate treatment sex discrimination" claims.

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 417.6**
**LEGAL CAUSE – DISCRIMINATION (FLORIDA CIVIL RIGHTS ACT)**
*[OPPOSED]*

The unwelcome sexual harassment, including the sexual advances, requests for sexual favors, and other conduct of a sexual nature; the re-assignment of certain of Plaintiff's accounts, failure to maintain other accounts of hers, and refusal to adjust her sales budget to reflect her lost accounts, depriving her of compensation entitlements; the refusal to accommodate her while on medical leave; and/or the hostility upon her return from medical leave are the legal causes of damage if they directly and in natural and continuous sequence produced or contributed substantially to producing such damage, so that it can reasonably be said that, but for the these actions, the damage would not have occurred.


**AUTHORITY:**
Florida Standard Jury Instructions, Section 417.6

**Defendants' Objections:**  Defendants object to this instruction in its entirety. This is a state court pattern instruction, not a federal court pattern instruction, despite federal law (not state law) governing the manner in which jury instructions are given. McCullough v. Beech Aircraft Corp., 587 F.2d 754, 759 (5th Cir. 1979).  The Florida Civil Rights Act is modeled after Title VII and, therefore, claims brought under the FCRA are analyzed under the same analytical framework as Title VII. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010).  This instruction is cumulative and duplicative of the other instructions given, and unduly emphases Plaintiff's sole remaining claim of hostile work environment sexual harassment, which is likely to confuse the jury as to claim it is deciding.  See, e.g., Lithgow Funeral Centers v. Loftin, 60 So. 2d 745, 747 (Fla. 1952) ("There is no reason for saying the same thing more than once except for the purpose of adding emphasis to the statement. This Court has criticised [sic] such undue emphasis in a number of cases."); Wilkinson v. Grover, 181 So. 2d 591, 594 (Fla. 3d DCA 1965) (three full charges on the subject of contributory negligence and a reference to it in five others was undue emphasis); Smith v. City of New Smyrna Beach, 588 F. App'x 965, 973 (11th Cir. 2014) (Eleventh Circuit pattern jury instruction given for both Title VII and FCRA retaliation claim).  Additionally, as Defendants briefed in pages 5-9 of their Omnibus Motion *in Limine* (Dkt. No.  146), Plaintiff's sole remaining claim is one for hostile work environment sexual harassment, and it was not until Plaintiff's response to Defendants'

Motion for Summary Judgment (Dkt. No. 80), did Plaintiff attempt to revive her retaliation claim by claiming she suffered a "tangible employment action," thereby attempting to convert her hostile work environment claim into one for *quid pro quo* sexual harassment and/or disparate treatment sex discrimination. See, Pattern Jury Instructions, Civil Cases, Eleventh Circuit 4.8 Annotations (noting that a "tangible employment action" sexual harassment claim is "also called 'quid pro quo' claim"). Additionally, Plaintiff has not so much as alleged the existence of a "'tangible employment action," which is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006).  However, even if she had, Plaintiff's own Amended Complaint makes clear that the alleged retaliatory acts relating to her allegedly having her accounts reassigned, not having her budget readjusted, having her clients purposefully neglected, and having her request to work from home denied are all "retaliatory" acts that solely support her now dismissed retaliation claim. (Dkt. No. 146 at 5-9). Defendants further object to this instruction because, as Defendants raised in their Omnibus Motion *in Limine*, each of the acts alleged in this instruction are acts that Plaintiff claimed supported her long dismissed retaliation claim, and in no way relate to her hostile work environment sexual harassment claim, which only relates to whether Plaintiff was subjected to unwelcome harassment that was sufficiently severe or pervasive enough to alter the terms and conditions of Plaintiff's employment. (Dkt. No. 146 at 5-10). Plaintiff's requested instruction is not substantially correct because it has no legal support and because it has no basis in the evidence. Reppert v. I.R.S., 418 F. App'x 897, 899 (11th Cir. 2011) (citing United States v. Terebecki, 692 F.2d 1345, 1351 (11th Cir.1982); Anderson v. Liberty Lobby Inc., 477 U.S. 242 (1986) (no requirement that question be submitted to jury unless proffered evidence sufficient to warrant decision favorable to requesting party)).

**Plaintiff's response:**  Defendants seek to avoid having separate instructions for the federal and state claims set forth in the Amended Complaint, citing to *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010), as support for same.  *Alvarez* does not support this contention, however.  Instead, *Alvarez* merely mentioned in dicta that separate analysis of a parallel state law claim was not necessary in reviewing a lower court's ruling on a summary judgment motion.  It did not speak to the issue of jury instructions.  Defendants further rely on *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir. 1979) as additional support for their contention that the state claims should not have separate instructions.  Once again, however, Defendants have mischaracterized the meaning of their cited authority.  *McCullough* involved a products liability and wrongful death action arising from the crash of a small plane.  While the court did, as Defendants state, provide that federal law governs the procedural matter of providing jury instructions, the case did not involve any instructions on state law and the court did not address such issues.  Defendants also cite to *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 973 (11th Cir. 2014), claiming that the trial court gave the Eleventh Circuit pattern jury instruction for both Title VII and FCRA retaliation claims.  The opinion, however, never indicates that any state law instructions were proposed.  Instead, the issue was focused on the content of the particular instruction, not whether a state law

instruction should have been given. *Id.* In fact, the court's subsequent analysis of the instructions that were provided had nothing to do with the propriety of including separate instructions for state law claims. *Id.*, at 983. In other words, the cases cited by Defendants for their argument against having separate instructions for the federal and state claims offer them no support whatsoever. Defendants' objections based on evidentiary issues are improper, as the jury is being instructed to consider the evidence. If there is no evidence to support Plaintiff's claims, the jury will decide accordingly.

Defendants further attempt to avoid the instruction in connection with their attempt to limit evidence such that any example of an adverse employment action may only be considered in connection with the previously dismissed retaliation claim, which position is in no way supported by applicable law. *See Fredette v. BVP Mgmt. Assocs.*, Case No. 94-325-Civ-Orl-18, 1995 U.S. Dist. LEXIS 13954, at *9 (M.D. Fla. July 6, 1995) (reversed on other grounds) ("Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when . . . submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual"). Despite their contention that Plaintiff's claim is limited only to "hostile work environment," Plaintiff's claim is limited only by the facts alleged and the provisions of the FCRA which recognize both hostile work environment and quid pro quo actions. Further, Defendants have specifically raised affirmative defenses to the allegedly unpled "*quid pro quo* sexual harassment and/or disparate treatment sex discrimination" claims.


Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 417.7**
**ISSUES ON PLAINTIFF'S CLAIM (FLORIDA CIVIL RIGHTS ACT)**
*[OPPOSED]*

The issues you must decide on the claim of Plaintiff against Defendants are whether Defendants discriminated against Plaintiff by subjecting her to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; re-assigning certain of Plaintiff's accounts, failing to maintain other accounts of hers, and refusing to adjust her sales budget to reflect her lost accounts, depriving her of compensation entitlements; refusing to accommodate her while on medical leave; and/or treating her with hostility upon her return from medical leave because of Plaintiff's sex and, if so, whether such discriminatory treatment was a legal cause of damage to Plaintiff.

**AUTHORITY:**
Florida Standard Jury Instructions, Section 417.7

**Defendants' Objections:** Defendants object to this instruction in its entirety. This is a state court pattern instruction, not a federal court pattern instruction, despite federal law (not state law) governing the manner in which jury instructions are given. McCullough v. Beech Aircraft Corp., 587 F.2d 754, 759 (5th Cir. 1979). The Florida Civil Rights Act is modeled after Title VII and, therefore, claims brought under the FCRA are analyzed under the same analytical framework as Title VII. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010). This instruction is cumulative and duplicative of the other instructions given, and unduly emphases Plaintiff's sole remaining claim of hostile work environment sexual harassment, which is likely to confuse the jury as to claim it is deciding. See, e.g., Lithgow Funeral Centers v. Loftin, 60 So. 2d 745, 747 (Fla. 1952) ("There is no reason for saying the same thing more than once except for the purpose of adding emphasis to the statement. This Court has criticised [sic] such undue emphasis in a number of cases."); Wilkinson v. Grover, 181 So. 2d 591, 594 (Fla. 3d DCA 1965) (three full charges on the subject of contributory negligence and a reference to it in five others was undue emphasis); Smith v. City of New Smyrna Beach, 588 F. App'x 965, 973 (11th Cir. 2014) (Eleventh Circuit pattern jury instruction given for both Title VII and FCRA retaliation claim). Additionally, as Defendants briefed in pages 5-9 of their Omnibus Motion *in Limine* (Dkt. No.  146), Plaintiff's sole remaining claim is one for hostile work environment sexual harassment, and it was not until Plaintiff's response to Defendants'

Motion for Summary Judgment (Dkt. No. 80), did Plaintiff attempt to revive her retaliation claim by claiming she suffered a "tangible employment action," thereby attempting to convert her hostile work environment claim into one for *quid pro quo* sexual harassment and/or disparate treatment sex discrimination. See, Pattern Jury Instructions, Civil Cases, Eleventh Circuit 4.8 Annotations (noting that a "tangible employment action" sexual harassment claim is "also called 'quid pro quo' claim"). Additionally, Plaintiff has not so much as alleged the existence of a "'tangible employment action," which is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006). However, even if she had, Plaintiff's own Amended Complaint makes clear that the alleged retaliatory acts relating to her allegedly having her accounts reassigned, not having her budget readjusted, having her clients purposefully neglected, and having her request to work from home denied are all "retaliatory" acts that solely support her now dismissed retaliation claim. (Dkt. No. 146 at 5-9). Defendants further object to this instruction because, as Defendants raised in their Omnibus Motion *in Limine*, each of the acts alleged in this instruction are acts that Plaintiff claimed supported her long dismissed retaliation claim, and in no way relate to her hostile work environment sexual harassment claim, which only relates to whether Plaintiff was subjected to unwelcome harassment that was sufficiently severe or pervasive enough to alter the terms and conditions of Plaintiff's employment. (Dkt. No. 146 at 5-10). Plaintiff's requested instruction is not substantially correct because it has no legal support and because it has no basis in the evidence. Reppert v. I.R.S., 418 F. App'x 897, 899 (11th Cir. 2011) (citing United States v. Terebecki, 692 F.2d 1345, 1351 (11th Cir.1982); Anderson v. Liberty Lobby Inc., 477 U.S. 242 (1986) (no requirement that question be submitted to jury unless proffered evidence sufficient to warrant decision favorable to requesting party)).

**Plaintiff's response:**   Defendants seek to avoid having separate instructions for the federal and state claims set forth in the Amended Complaint, citing to *Alvarez v. Royal Atl. Devlopers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010), as support for same.  *Alvarez* does not support this contention, however.  Instead, *Alvarez* merely mentioned in dicta that separate analysis of a parallel state law claim was not necessary in reviewing a lower court's ruling on a summary judgment motion.  It did not speak to the issue of jury instructions.  Defendants further rely on *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir. 1979) as additional support for their contention that the state claims should not have separate instructions.   Once again, however, Defendants have mischaracterized the meaning of their cited authority.   *McCullough* involved a products liability and wrongful death action arising from the crash of a small plane.  While the court did, as Defendants state, provide that federal law governs the procedural matter of providing jury instructions, the case did not involve any instructions on state law and the court did not address such issues.  Defendants also cite to *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 973 (11th Cir. 2014), claiming that the trial court gave the Eleventh Circuit pattern jury instruction for both Title VII and FCRA retaliation claims.  The opinion, however, never indicates that any state law instructions were proposed.  Instead, the issue was focused on the content of the particular instruction, not whether a state law

instruction should have been given. *Id.* In fact, the court's subsequent analysis of the instructions that were provided had nothing to do with the propriety of including separate instructions for state law claims. *Id.*, at 983. In other words, the cases cited by Defendants for their argument against having separate instructions for the federal and state claims offer them no support whatsoever. Defendants' objections based on evidentiary issues are improper, as the jury is being instructed to consider the evidence. If there is no evidence to support Plaintiff's claims, the jury will decide accordingly.

Defendants further attempt to avoid the instruction in connection with their attempt to limit evidence such that any example of an adverse employment action may only be considered in connection with the previously dismissed retaliation claim, which position is in no way supported by applicable law. *See Fredette v. BVP Mgmt. Assocs.*, Case No. 94-325-Civ-Orl-18, 1995 U.S. Dist. LEXIS 13954, at *9 (M.D. Fla. July 6, 1995) (reversed on other grounds) ("Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when . . . submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual"). Despite their contention that Plaintiff's claim is limited only to "hostile work environment," Plaintiff's claim is limited only by the facts alleged and the provisions of the FCRA which recognize both hostile work environment and quid pro quo actions. Further, Defendants have specifically raised affirmative defenses to the allegedly unpled "*quid pro quo* sexual harassment and/or disparate treatment sex discrimination" claims.


Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 417.9**
**UNLAWFUL DISCRIMINATION DAMAGES (FLORIDA CIVIL RIGHTS ACT)**
*[OPPOSED]*

If you find for Defendants, you will not consider the matter of damages. But if you find for Plaintiff, you should award Plaintiff an amount of money that the greater weight of the evidence shows will fairly and adequately compensate her for such damage, including any such damage as Plaintiff is reasonably certain to incur in the future. You shall consider the following elements of damages:

- Any difference between the total of Plaintiff's lost wages and benefits up to the date of trial and what she actually earned during that time.

- Any mental anguish, loss of dignity, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation experienced in the past or to be experienced in the future. There is no exact standard for measuring such damages. The amount should be fair and just in the light of the evidence.

- Any punitive damages that may be warranted. The purpose of punitive damages is not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future. Punitive damages may be awarded if the discrimination against Plaintiff was willful or wanton, and Defendants were at fault, or at least negligent, for not taking prompt remedial action after having received notification of the conduct. In determining whether to award punitive damages, you may consider factors such as: (1) whether Defendants responded adequately to harassment complaints, (2) whether they ignored their own harassment policy, and/or (3) whether they moved the complaining employee to a less attractive job to avoid the harasser. Punitive damages do not require an award of compensatory damages and may be awarded even if you find that Plaintiff is entitled only to nominal damages.

**AUTHORITY:**
Florida Standard Jury Instructions, Section 417.9 (modified); Punitive damages instruction as per: *Owens-Corning Fiberglas Corp. v. Ballard*, 749 So. 2d 483, 486 (Fla. 1999); *Speedway SuperAmerica, LLC v. Dupont*, 933 So. 2d 75, 90-91 (Fla. 5th DCA 2006); *Servillo v. Sola Medi Spa, Ltd. Liab. Co.*, No. 2:20-cv-00130-JLB-NPM, 2021 U.S. Dist. LEXIS 22165, at *6 n.2 (M.D. Fla. Feb. 5, 2021); *Young v. Becker & Poliakoff, P.A.*, 88 So. 3d 1002, 1009 (Fla. 4th DCA 2012).

**Defendants' Objections:**  Defendants object to this instruction in its entirety. This is a state court pattern instruction, not a federal court pattern instruction, despite federal law

(not state law) governing the manner in which jury instructions are given. McCullough v. Beech Aircraft Corp., 587 F.2d 754, 759 (5th Cir. 1979).  The Florida Civil Rights Act is modeled after Title VII and, therefore, claims brought under the FCRA are analyzed under the same analytical framework as Title VII. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010).  This instruction is cumulative and duplicative of the other instructions given, and unduly emphasizes Plaintiff's sole remaining claim of hostile work environment sexual harassment, which is likely to confuse the jury as to claim it is deciding.  See, e.g., Lithgow Funeral Centers v. Loftin, 60 So. 2d 745, 747 (Fla. 1952) ("There is no reason for saying the same thing more than once except for the purpose of adding emphasis to the statement. This Court has criticised [sic] such undue emphasis in a number of cases."); Wilkinson v. Grover, 181 So. 2d 591, 594 (Fla. 3d DCA 1965) (three full charges on the subject of contributory negligence and a reference to it in five others was undue emphasis); Smith v. City of New Smyrna Beach, 588 F. App'x 965, 973 (11th Cir. 2014) (Eleventh Circuit pattern jury instruction given for both Title VII and FCRA retaliation claim).  Defendants further object to Plaintiff's claim that punitive damages may be awarded even if compensatory damages are not. In support of that position Plaintiff cites to Second and Seventh Circuit case law that is not only not the law of this Circuit, but it also predates the Supreme Court's decision in State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003), wherein the Supreme Court held that few awards exceeding a single digit ratio between punitive and compensatory damages will satisfy due process.  Defendants further object to Plaintiff's proposed instruction on punitive damages in its entirety.  Plaintiff has raised no evidence to support that Defendants have engaged in "discriminatory practices with malice or with reckless indifference" to her federally protected rights, and Plaintiff has failed to support submitting the issue of punitive damages to the jury.  Defendants further object to Plaintiff's proposed instruction regarding back and front pay damages because Plaintiff does not have any evidence to support that any alleged discrimination caused her inability to work. Instead, Plaintiff admits that she has been unable to work since November 12, 2019 as a result of the many surgeries she had following a non-work-related car accident. Plaintiff's requested instruction is not substantially correct because it has no legal support and because it has no basis in the evidence. Reppert v. I.R.S., 418 F. App'x 897, 899 (11th Cir. 2011) (citing United States v. Terebecki, 692 F.2d 1345, 1351 (11th Cir.1982); Anderson v. Liberty Lobby Inc., 477 U.S. 242 (1986) (no requirement that question be submitted to jury unless proffered evidence sufficient to warrant decision favorable to requesting party)). Defendants also object to Plaintiff's modifications of the pattern instruction, including her inclusion the "nominal" damages instruction, which is not part of this pattern instruction, was not pled in her Amended Complaint (Dkt. No. 31), and which is not available to Plaintiff because proving damages is a necessary element of her claim.

**Plaintiff's response:**   Defendants seek to avoid having separate instructions for the federal and state claims set forth in the Amended Complaint, citing to *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010), as support for same.  *Alvarez* does not support this contention, however.  Instead, *Alvarez* merely mentioned in dicta that separate analysis of a parallel state law claim was not necessary in reviewing a lower court's ruling on a summary judgment motion.  It did not speak to the issue of jury instructions.  Defendants further rely on *McCullough v. Beech Aircraft Corp.*, 587 F.2d

754, 759 (5th Cir. 1979) as additional support for their contention that the state claims should not have separate instructions. Once again, however, Defendants have mischaracterized the meaning of their cited authority. *McCullough* involved a products liability and wrongful death action arising from the crash of a small plane. While the court did, as Defendants state, provide that federal law governs the procedural matter of providing jury instructions, the case did not involve any instructions on state law and the court did not address such issues. Defendants also cite to *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 973 (11th Cir. 2014), claiming that the trial court gave the Eleventh Circuit pattern jury instruction for both Title VII and FCRA retaliation claims. The opinion, however, never indicates that any state law instructions were proposed. Instead, the issue was focused on the content of the particular instruction, not whether a state law instruction should have been given. *Id.* In fact, the court's subsequent analysis of the instructions that were provided had nothing to do with the propriety of including separate instructions for state law claims. *Id.*, at 983. In other words, the cases cited by Defendants for their argument against having separate instructions for the federal and state claims offer them no support whatsoever. Defendants' objections based on evidentiary issues are improper, as the jury is being instructed to consider the evidence. If there is no evidence to support Plaintiff's claims and/or an award of punitive damages, the jury will decide accordingly.

Nominal damages are recoverable pursuant to *Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 118 S. Ct. 2275, 2280 (1998); *Henson v. Dundee*, 682 F.2d 897, 905 (11th Cir. 1982). Compensatory or nominal damages are not a prerequisite to an award of punitive damages. *EEOC v. W & O, Inc.*, 36 F. Supp. 2d 1348, 1350 (S.D. Fla. 1998) aff'd *United States EEOC v. W&O Inc.*, 213 F.3d 600, 615 (11th Cir. 2000). Regarding punitive damages awarded against large companies, please see *Pullum v. Ford Motor Co.*, No. 2:19-cv-120-ECM, 2019 U.S. Dist. LEXIS 104097, at *5 (M.D. Ala. June 21, 2019) *(citing Roe v. Michelin N. Am. Inc.*, 637 F.Supp.2d 995, 998 (M.D. Ala. 2009), *aff'd*, 613 F.3d 1058 (11th Cir. 2013) ("[W]hen considering claims for punitive damages against large companies, it is clear that 'any award that is soundly and honestly calculated to punish and deter a large company's wanton behavior …would have to be substantial.'"); *See also Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320 (11th Cir. 1999) (noting that "[a] bigger award is needed to 'attract the . . . attention' of a large corporation'" and approving a punitive damages award where ratio of punitive to compensatory damages was 100:1). *See also Owens-Corning Fiberglas Corp. v. Ballard*, 749 So. 2d 483, 486 (Fla. 1999); *Speedway SuperAmerica, LLC v. Dupont*, 933 So. 2d 75, 90-91 (Fla. 5th DCA 2006); *Servillo v. Sola Medi Spa, Ltd. Liab. Co.*, No. 2:20-cv-00130-JLB-NPM, 2021 U.S. Dist. LEXIS 22165, at *6 n.2 (M.D. Fla. Feb. 5, 2021); *Young v. Becker & Poliakoff, P.A.*, 88 So. 3d 1002, 1009 (Fla. 4th DCA 2012).


Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 417.12**
**REDUCTION OF DAMAGES TO PRESENT VALUE (FLORIDA CIVIL RIGHTS ACT)**
*[OPPOSED]*

Any amount of damages that you allow for wages and benefits to be lost in the future should be reduced to its present money value and only the present money value of those future economic damages should be included in your verdict.

The present money value of future economic damages is the sum of money needed now which, together with what that sum will earn in the future, will compensate Plaintiff for these losses as they are actually experienced in future years.

**AUTHORITY:**
Florida Standard Jury Instructions, Section 417.12

**Defendants' Objections:**  Defendants object to this instruction in its entirety. This is a state court pattern instruction, not a federal court pattern instruction, despite federal law (not state law) governing the manner in which jury instructions are given. McCullough v. Beech Aircraft Corp., 587 F.2d 754, 759 (5th Cir. 1979).  The Florida Civil Rights Act is modeled after Title VII and, therefore, claims brought under the FCRA are analyzed under the same analytical framework as Title VII. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010).  This instruction is cumulative and duplicative of the other instructions given, and unduly emphases Plaintiff's sole remaining claim of hostile work environment sexual harassment, which is likely to confuse the jury as to claim it is deciding. See, e.g., Lithgow Funeral Centers v. Loftin, 60 So. 2d 745, 747 (Fla. 1952) ("There is no reason for saying the same thing more than once except for the purpose of adding emphasis to the statement. This Court has criticised [sic] such undue emphasis in a number of cases."); Wilkinson v. Grover, 181 So. 2d 591, 594 (Fla. 3d DCA 1965) (three full charges on the subject of contributory negligence and a reference to it in five others was undue emphasis); Smith v. City of New Smyrna Beach, 588 F. App'x 965, 973 (11th Cir. 2014) (Eleventh Circuit pattern jury instruction given for both Title VII and FCRA retaliation claim).

**Plaintiff's response:**  Defendants seek to avoid having separate instructions for the federal and state claims set forth in the Amended Complaint, citing to *Alvarez v. Royal*

*Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010), as support for same.  *Alvarez* does not support this contention, however.  Instead, *Alvarez* merely mentioned in dicta that separate analysis of a parallel state law claim was not necessary in reviewing a lower court's ruling on a summary judgment motion.  It did not speak to the issue of jury instructions.  Defendants further rely on *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir. 1979) as additional support for their contention that the state claims should not have separate instructions.  Once again, however, Defendants have mischaracterized the meaning of their cited authority.  *McCullough* involved a products liability and wrongful death action arising from the crash of a small plane.  While the court did, as Defendants state, provide that federal law governs the procedural matter of providing jury instructions, the case did not involve any instructions on state law and the court did not address such issues.  Defendants also cite to *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 973 (11th Cir. 2014), claiming that the trial court gave the Eleventh Circuit pattern jury instruction for both Title VII and FCRA retaliation claims.  The opinion, however, never indicates that any state law instructions were proposed.  Instead, the issue was focused on the content of the particular instruction, not whether a state law instruction should have been given.  *Id.*  In fact, the court's subsequent analysis of the instructions that were provided had nothing to do with the propriety of including separate instructions for state law claims.  *Id.*, at 983.  In other words, the cases cited by Defendants for their argument against having separate instructions for the federal and state claims offer them no support whatsoever.

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**JOINT PROPOSED JURY INSTRUCTION 3.8.1**
**DUTY TO DELIBERATE WHEN ONLY THE PLAINTIFF CLAIMS DAMAGES**
*[AGREED]*

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 3.8.1

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**JOINT PROPOSED JURY INSTRUCTION 3.9**
**ELECTION OF FOREPERSON EXPLANATION OF VERDICT FORM**
[*AGREED*]

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict form]

Take the verdict form with you to the jury room.  When you've all agreed on the verdict, your foreperson must fill in the forms, sign it and date it.  Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer.  The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom.  Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response.  But I caution you not to tell me how many jurors have voted one way or the other at that time.  That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 3.9

Accepted:
Rejected:
Withdrawn:
Given as Amended:

**PLAINTIFF'S PROPOSED JURY INSTRUCTION 2.8**
**CIVIL *ALLEN* CHARGE**
*[OPPOSED]*

Members of the jury:

I'm going to ask you to continue your deliberations to reach a verdict. Please consider the following comments.

This is an important case. The trial has been expensive in terms of time, effort, money, and emotional strain to both the plaintiff and the defendant. If you fail to agree on a verdict, the case remains open and may have to be tried again. A second trial would be costly to both sides, and there's no reason to believe either side can try it again better or more exhaustively than they have tried it before you.

Any future jury would be selected in the same manner and from the same source as you. There's no reason to believe that the case could ever be submitted to a jury of people more conscientious, more impartial, or more competent to decide it – or that either side could produce more or clearer evidence.

It's your duty to consult with one another and to deliberate with a view to reaching an agreement – if you can do it without violating your individual judgment. You must not give up your honest beliefs about the evidence's weight or effect solely because of other jurors' opinions or just to return a verdict. You must each decide the case for yourself – but only after you consider the evidence with your fellow jurors.

You shouldn't hesitate to reexamine your own views and change your opinion if you become convinced it's wrong. To bring your minds to a unanimous result, you must openly and frankly examine the questions submitted to you with proper regard for the opinions of others and with a willingness to reexamine your own views.

If a substantial majority of you is for a verdict for one party, each of you who holds a different position ought to consider whether your position is reasonable. It may not be reasonable since it makes so little impression on the minds of your fellow jurors – who bear the same responsibility, serve under the same oath, and have heard the same evidence.

You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in light of the court's instructions on the law. You may take all the time that you need.

I remind you that in your deliberations, you are to consider the court's instructions as a whole. You shouldn't single out any part of any instructions including this one, and ignore others.

You may now return to the jury room and continue your deliberations.

**AUTHORITY:**
Pattern Jury Instructions, Civil Cases, Eleventh Circuit 2.8

**Defendants' Objection:**  Defendants object to this instruction in its entirety. This pattern instruction is an instruction that may only be given when there is a deadlocked jury in a civil case. It is not given after the close of evidence.  This instruction should not be submitted to the jury in writing.  Defendant's instructions herein are those that should be given at the close of evidence and submitted to the jury when they begin deliberations. Plaintiff has not shown any basis to give this instruction.  Plaintiff improperly offers the Allen instruction prior to having a deadlocked jury, which will not serve to encourage the jury to reach a verdict and making the circumstances under which it is delivered inherently coercive.

**Plaintiff's response:**   This instruction tracks Pattern Jury Instruction 2.8. Despite Defendants' contention otherwise, the Case Management and Scheduling Order [DE 22] provides that "the parties shall attach to the Joint Final Pretrial Statement a single set of jointly-proposed jury instructions in order of presentation to the jury." There is no limitation requiring the parties to omit those classified as preliminary instructions or trial instructions in the Eleventh Circuit Pattern Jury Instructions, Civil Cases. If the jury does not claim to be unable to reach a verdict, this instruction will be withdrawn. In an abundance of caution,

however, approved language and any proposed deviations therefrom are properly addressed herein in the interest of judicial economy.

Accepted:
Rejected:
Withdrawn:
Given as Amended: